**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Christopher SIMMONDS,**
**Defendant–Appellant.**

No. 90–3218.

United States Court of Appeals,
Tenth Circuit.

April 29, 1991.

Christina L. Morris, Asst. U.S. Atty., Kansas City, Kan. (Lee Thompson, U.S. Atty., and Tanya J. Treadway, Asst. U.S. Atty., Kansas City, Kan., on the brief), for plaintiff-appellee.

James E. Rumsey, Lawrence, Kan., for defendant-appellant.

MOORE, ALDISERT,[*] and McWILLIAMS, Circuit Judges.

ALDISERT, Circuit Judge.

This case requires us to decide whether the district court committed plain error by failing to instruct the jury on a defense of diminished capacity in a prosecution of an inmate for assaulting correctional officers. A federal jury convicted Christopher Simmonds, an inmate in a federal penitentiary, of assaulting two correctional officers with razor blades and of possessing the blades with the intent to use them as a weapon. Although Simmonds relied solely on a theory of self-defense at trial, he argues for the first time on appeal that the district court should have inferred from the evidence that Simmonds lacked the capacity to form the requisite specific intent to commit these crimes and instructed the jury sua sponte on a defense of diminished capacity. We conclude that the district court did not com-

mit plain error and affirm the judgment of conviction.

Trial court jurisdiction was proper based on 18 U.S.C. § 3231. Jurisdiction on appeal is proper under 28 U.S.C. § 1291. The appeal was timely filed under Rule 4(b), F.R.A.P.

## I.

On November 29, 1988, Correctional Officer Mike Janas informed Christopher Simmonds, an inmate at the United States Penitentiary at Leavenworth, Kansas, that he was transferring Simmonds' work detail from inside the center hall to outside in the east yard. Unhappy with this decision, Simmonds became very agitated and angry, prompting Officer Janas to report the incident to the lieutenant in charge.

At the lieutenant's direction, Correctional Officers Barry Edge and Rick Nared went to Simmonds' housing unit to bring him to the lieutenant's office. When the officers approached Simmonds, he told them to wait a few minutes and started to walk away. As he was walking away, Simmonds reached into his pants pocket, pulled out several double-edged razor blades and placed them between the fingers of both hands.

Failing to persuade Simmonds to disarm voluntarily, the officers tried to disarm him by pinning him against a wall with a stretcher, but he managed to break free and swing the razor blades at the officers. Simmonds cut Officers Edge and Nared with the blades, resulting in a minor cut to Officer Edge and a severe cut to Officer Nared.

On January 31, 1990, the grand jury returned a three-count indictment against Simmonds. Counts I and II charged him with assaulting Officers Edge and Nared with a deadly and dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b). Count III charged him with possession of a prohibited object intended to be used as a

---

[*] Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

weapon, in violation of 18 U.S.C. § 1791(a)(2).

Before trial, Simmonds' counsel filed a notice of intent to rely on the defense of insanity in accordance with Rule 12.2, F.R. Crim.P. Simmonds also filed a *pro se* motion for the same purpose. However, both Simmonds and his counsel abandoned the insanity defense before trial, electing instead to rely solely on a theory of self-defense based on his claim that he suffers from Post–Traumatic Stress Disorder (PTSD) as a result of a stabbing by a fellow inmate in 1987. Simmonds' defense hinged on the testimony of Dr. William Logan, his psychiatric expert, who testified that the disorder causes Simmonds to react violently when placed in situations in which he becomes startled or afraid. Trial Transcript at 275. Dr. Logan stated that because Simmonds thought he was going to be hurt in the confrontation with the correctional officers, he used force to prevent them from approaching him. *Id.* at 277–78. This testimony, however, was rebutted by two government experts, Dr. Denny and Dr. Walters, who testified to the contrary. *Id.* at 312–315, 329–331.

## II.

Recognizing that the charged offenses are "specific intent" crimes, the court instructed the jury that it could not find Simmonds guilty of Counts I and II unless it determined that he acted "knowingly and willfully," and that Simmonds could not be convicted of Count III unless the jury found that he "knowingly" intended to use the razor blades as a weapon. Jury Inst. Nos. 8 & 11. The court stated that "[a]n act is done 'knowingly' if done voluntarily and intentionally, and not because of mistake or accident or other reason." *Id.* at No. 8. After giving the standard instructions regarding specific intent, the court gave the jury a separate instruction on self-defense. *Id.* at No. 14. Defense counsel did not request an instruction on diminished capacity, nor did the district court give one on its own accord.

The jury convicted Simmonds on all three counts and he was duly sentenced. This appeal followed.

## III.

▌ When the defendant fails to object to the jury instructions at the time of trial, we employ a plain error standard of review if the instructions are the basis of the appeal. F.R.Crim.P. 52(b); *United States v. Glick,* 710 F.2d 639, 643 (10th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 229 (1984). An error is plain if it is obvious or " 'otherwise seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Devous,* 764 F.2d 1349, 1353 (10th Cir.1985) (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). The error must be so "plain" that " 'the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.' " *Id.* (quoting *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)).

Conceding that defense counsel did not object to the court's failure to give an instruction on diminished capacity, Simmonds argues that this failure was plain error and that the convictions should be reversed. The government responds that the convictions must stand because Simmonds has not shown (1) that the evidence at trial established his claim that he suffered from PTSD; (2) that the evidence demonstrated a connection between this disorder and diminished capacity and (3) that the jury instructions, taken as a whole, did not present Simmonds' theory of defense. We agree.

### A.

▌ There is no authority for the proposition that a trial court commits plain error when it fails to instruct a jury on diminished capacity after the defendant has presented evidence of PTSD as the basis for self-defense. At best, plain error is strong medicine. The Supreme Court instructs us to use it "sparingly, solely in those circumstances in which a miscarriage

of justice would otherwise result." *United States v. Young,* 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *Frady,* 456 U.S. at 163 n. 14, 102 S.Ct. at 1592 n. 14).

■ We seldom invoke the plain error doctrine because our function on appeal is to examine, within the statement of issues presented for consideration, the legal theories advanced by the parties at trial, and to determine whether the trial court ruled properly on the issues before it. The general precept that we do not notice questions that the parties have failed to present at trial—except under the most unusual circumstances—is based on the common law tradition that the parties must offer all the evidence they believe relevant to the issues that the trial court alone is competent to decide. This requirement also bades fealty to the adversary system: It insures that litigants will not be surprised on appeal of issues upon which they had no opportunity to introduce evidence at trial. *See Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). Our strong hesitation to notice such issues recognizes that it is conceptually impossible to fault a trial court for failing to rule on an issue that had not been presented to it. To be sure, Simmonds is unable to cite any authority supporting his notion that when evidence introduced at trial has the capability of supporting a defense of diminished capacity, notwithstanding the failure of counsel to raise the issue, a trial court has the responsibility of somehow discerning or discovering the defense and then supplanting counsel by gratuitously instructing the jury sua sponte on the unsolicited theory of defense.

Defense counsel routinely adopt certain defenses and reject others while developing trial strategies, as illustrated by Simmonds' pretrial abandonment of his insanity defense in favor of self-defense. We previously have held that a criminal defendant "is entitled to an instruction on *his theory of defense* if such finds support in the evidence and the law." *United States v. Prazak,* 623 F.2d 152, 154 (10th Cir.), *cert. denied,* 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980) (emphasis added). Simmonds does not dispute that he received his requested jury instruction on self-defense, yet he challenges the district court's failure to embark on an intellectual frolic of its own and instruct the jury on a defense he did not choose to assert and to prove.

■ The record clearly demonstrates why Simmonds introduced evidence of PTSD: It was the medical predicate to his theory of self-defense. After Dr. Logan stated his opinion that Simmonds suffers from the disorder, defense counsel asked him whether "Simmonds thought he was acting in self-defense" on the night in question. Trial Transcript at 277. Dr. Logan responded that Simmonds "thought he was going to be hurt and was trying to do something to block the officers off from approaching him." *Id.* at 278. This lay at the heart of his counsel's closing argument to the jury in which she reiterated Dr. Logan's testimony regarding self-defense:

> Mr. Simmonds ... told you that he had a flashback to the incident that happened in Lewisburg. Doctor Logan told you that Mr. Simmonds suffers from post-traumatic stress disorder. I'm sure that you have read or heard about soldiers who came back from Vietnam suffering from post-traumatic stress disorder. They experienced flashbacks causing them to act in strange ways.

> Dr. Logan also testified that Mr. Simmonds thought he was going to be hurt by the officers and that he acted to prevent that from happening.

*Id.* at 390–91. At no point did either Dr. Logan or defense counsel link this evidence of PTSD to a defense of diminished capacity. The evidence was offered purely and simply as an excuse or justification for Simmonds' actions, not as evidence that the disorder negated Simmonds' ability to form the requisite intent.

### B.

■ Moreover, Simmonds has not shown that he even introduced sufficient evidence of diminished capacity at trial to warrant a separate instruction. A criminal defendant is not entitled to an instruction on a de-

fense "where there is no support therefor in the evidence or the law." *Prazak*, 623 F.2d at 154. Relying solely on a theory of self-defense, Simmonds' counsel presented expert testimony that Simmonds suffered from PTSD, which caused him to believe that the officers' conduct threatened his life. This testimony was rebutted by two government expert witnesses who stated that Simmonds did not suffer from the disorder. There was not one iota of evidence associating PTSD with a defense of diminished capacity, nor any to support a separate jury instruction on that defense. The district court plainly did not err in failing to give the instruction. The court's failure to thrust a diminished capacity defense upon Simmonds, a defense neither offered nor proved, cannot be characterized as a "miscarriage of justice" warranting reversal for plain error.

### C.

■ This, too, must be said. Even when the district court has a duty to instruct the jury on diminished capacity, the court's standard specific intent instruction generally fulfills this duty. *United States v. Bartlett*, 856 F.2d 1071 (8th Cir.1988); *United States v. Cebian*, 774 F.2d 446 (11th Cir.1985). In both *Bartlett* and *Cebian*, the district court had rejected the defendant's proposed separate instruction on diminished capacity. The court of appeals upheld the conviction in each case, determining that a standard specific intent instruction was sufficient because it substantially covered the proposed diminished capacity instruction. *Bartlett*, 856 F.2d at 1082; *Cebian*, 774 F.2d at 448; *see United States v. Hoffner*, 777 F.2d 1423, 1426 (10th Cir.1985) ("It is enough that the instructions as a whole give an accurate statement of the law.").

Like Simmonds, the defendant in *Cebian* introduced evidence that she suffered from the disorder. *Cebian*, 774 F.2d at 446–47. Unlike Simmonds, she argued that PTSD prevented her from forming the requisite intent to commit the crime with which she was charged, and that she was entitled to a separate instruction on diminished capacity. *Id.* The court responded:

> [The] PTSD theory simply represents a new approach to an old element; at its root, [the defendant's] claim is still that she lacked the specific intent to commit the crime with which she is charged. The defendant is entitled to put on evidence, psychological or otherwise, to show why this might be true. But the PTSD claim is a gloss on the specific intent issue that does not, in the trial court's good discretion, require a separate and distinct jury charge.

*Id.* at 448. Applying this rationale, we hold that even if an instruction on diminished capacity was warranted, the district court's instructions on specific intent were sufficient.

### IV.

We conclude, therefore, that the district court did not commit plain error by failing to give a jury instruction on diminished capacity. The judgment of the district court is AFFIRMED.