**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Garrett Lee RUSSELL, Defendant–Appellant.**

No. 95–5300.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 8, 1995.

Decided March 1, 1996.

---

Charles P. Wisdom, Jr., Asst. U.S. Atty. (argued and briefed), Lexington, KY, Martin L. Hatfield, Asst. U.S. Atty., London, KY, for plaintiff-appellee.

Samuel Manly (argued and briefed), Louisville, KY, for defendant-appellant.

Before: CONTIE, BATCHELDER, and MOORE, Circuit Judges.

CONTIE, Circuit Judge.

Garrett Lee Russell ("Russell") asserts that his conviction for using and carrying a firearm during and in relation to a drug trafficking offense is not supported by sufficient evidence. Russell also argues that the district court improperly increased his sentence for unrelated criminal conduct not charged in the indictment. Though we affirm Russell's convictions, we vacate his sentence and remand this action to the district court for resentencing.

I.

In 1993, Middlesboro (Kentucky) Police Chief Jerry Harris informed FBI Special Agent John Parrish that defendant-appellant Garrett Lee Russell, a Middlesboro police officer, might be involved in illegal drug trafficking activities. Bennie Meyers, a government informant, subsequently met with Russell to discuss the purchase of marijuana. On July 14, 1993, Meyers purchased approximately 5.6 grams of marijuana from Russell for $50. At the time of the transaction, Russell was on duty as a Middlesboro police officer and, as such, was driving a police

cruiser, wearing a police uniform, and carrying a firearm. On July 25, 1993, at approximately 10:00 in the evening, Russell sold Meyers 15 dilaudid tablets. Though Russell was off duty and driving his personal automobile at the time, he was nevertheless wearing a police uniform and carrying a pistol.[1] On July 27, 1993, Russell sold Meyers approximately one ounce of cocaine. At the time of the sale, Russell was on duty, in uniform, driving a police car, and carrying a firearm.

On March 18, 1994, Russell was arrested at the Pine Mountain State Park in Bell County, Kentucky. At the time of his arrest, Russell was attending police training and possessed approximately .78 grams of cocaine.

On April 7, 1994, the grand jury returned a six-count indictment against Russell. On September 1, 1994, the grand jury returned a superseding indictment charging Russell with: possessing with the intent to distribute, and the distribution of, marijuana (count 1); carrying and using a firearm during and in relation to a drug (marijuana) trafficking crime (count 2); possessing with the intent to distribute, and the distribution of, dilaudid (count 3); carrying and using a firearm during and in relation to a drug (dilaudid) trafficking crime (count 4); possessing with the intent to distribute, and the distribution of, cocaine (count 5); carrying and using a firearm during and in relation to a drug (cocaine) trafficking crime (count 6); and possessing cocaine (count 7). On September 12, 1994, Russell pled "not guilty" to all counts in the superseding indictment.

Though Russell admitted at trial that he sold the drugs charged in counts 1, 3 and 5 of the superseding indictment, and admitted that he possessed the cocaine charged in count 7, Russell argued that the firearm that he wore when he sold drugs to Meyers was simply a part of his police uniform and was

1. Russell claims that he was on his way home from work that evening.

2. The jury acquitted Russell of the charges in counts 2 and 6 of the superseding indictment.

3. Both motions asserted that the jury's verdict on count 4 was not supported by sufficient evidence.

not worn in furtherance of his drug trafficking activities.

On September 16, 1994, the jury found Russell guilty of the crimes charged in counts 1, 3, 4, 5, and 7 of the superseding indictment.[2] On September 21, 1994, Russell's attorney filed a motion for judgment of acquittal. On September 29, 1994, Russell, acting *pro se*, filed a motion for judgment of acquittal and/or a new trial.[3] On January 3, 1995, the district court denied the motions.

On February 14, 1995, the district court sentenced Russell to 27 months imprisonment on counts 1, 3 and 5, and to 12 months on count 7, all to be served concurrently,[4] and to 60 months imprisonment on count 4, to be served consecutively to the other counts, resulting in an 87 month term of imprisonment. On February 22, 1995, Russell timely appealed.

## II.

### Russell's Firearm Conviction

■ Count 4 of the superseding indictment alleges:

> That on or about July 25, 1993, in Bell County, in the Eastern District of Kentucky, GARRETT LEE RUSSELL, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, the distribution of dilaudid, a Schedule II controlled substance ... as set out in Count 3 of this indictment, did use and carry a firearm; all in violation of Title 18, United States Code, Section 924(c)(1).

September 1, 1994 Superseding Indictment at 2.

On appeal, Russell argues that: his possession of a firearm during the commission of his drug trafficking activities was merely incidental to his employment as a police offi-

4. It should be noted that the district court increased Russell's base offense level by two points at sentencing (pursuant to U.S.S.G. § 1B1.3) for accepting $200 from Meyers to protect a 57.80 gram cocaine transaction between Meyers and an undercover FBI agent.

cer;[5] and the jury reached an inconsistent verdict by acquitting him of similar section 924(c)(1) charges in counts 2 and 6 of the superseding indictment.[6] In response, the United States asserts that, because Russell was "off duty" at the time, Russell undoubtedly possessed the firearm during and in relation to his dilaudid trafficking offense on July 25, 1993, in furtherance of his illegal conduct.[7]

■ We must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). The evidence in the instant action, viewed in the light most favorable to the prosecution, reveals that a rational trier of fact could have found Russell guilty of using or carrying a firearm during and in relation to the drug trafficking crime charged in count 3 of the superseding indictment.

18 U.S.C. § 924(c)(1) provides (in relevant part): "Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years...." In *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Supreme Court held that, to sustain a conviction under the "use" prong of section 924(c)(1), the prosecution must show that the defendant actively employed the firearm during and in relation to the predicate crime. Under this reading, "use" includes the brandishing or displaying of a firearm, as well as the reference to a firearm in the defendant's possession. *Id.* at ——, 116 S.Ct. at 508. Indeed, the Supreme Court concluded that:

> Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning. While a broad reading of "use" undermines virtually any function for "carry," a more limited, active interpretation of "use" preserves a meaningful role for "carries" as an alternative basis for a charge. Under the interpretation we enunciate today, a firearm can be used without being carried, *e.g.,* when an offender has a gun on display during a transaction, or barters with a firearm without handling it; and a firearm can be

---

5. Specifically, Russell asserts that he:

   never referred to, brandished, used, threatened to use or had any use for the pistol in relation to his drug trafficking activity on any of the occasions when he carried it during such activity. Meyers nowhere suggests that Russell was armed in any way "in relation to" Russell's drug trafficking. Russell himself states that his possession of the firearm on the occasions of his drug trafficking was coincidental to his employment as a police officer.

   Appellant's Brief at 2.

6. Russell asserts that:

   There are no discernable differences in the factual contexts of the occasions on which, the manner in which and the evident purposes for which Russell was armed on July 14, 25 and 27, 1993, except that on July 25, he was just coming off duty; whereas on July 14 and 27, he was actually on duty.

   ....

   [T]he evidence is insufficient for a rational jury to have concluded beyond a reasonable doubt that Russell, who clearly did not "use" his firearm at all, "carried" it as an integral part of the drug trafficking offense charged in Count 3; or that the firearm played any role in or facilitated the commission of that offense.

   The proof ... appears to be in the jury's correct conclusion, on identical facts but one, as to Russell's innocence under Counts 2 and 6 of the indictment. The only factual difference in the three scenarios is that on the occasions charged in Counts 2 and 6, Russell was "on duty" as a police officer, whereas on the occasion charged in Count 4, he was just coming "off duty" after a 24 hour tour.

   Appellant's Brief at 2, 38–39 (citations and footnotes omitted).

7. On appeal, the United States asserts:

   A rational jury could have easily concluded beyond a reasonable doubt that Russell's use or carrying of his firearm on July 14 and 27 when he dealt in drugs played no role in the facilitation of his drug trafficking offense because he was "on duty" and was required to use or carry a firearm as a police officer, but that his use or carrying of his firearm on July 25 did facilitate the drug trafficking offense that day because he was "off duty" and thus was *not* required to use or carry a firearm as a police officer.

   Appellee's Brief at 10 (emphasis in original).

carried without being used, *e.g.*, when an offender keeps a gun hidden in his clothing throughout a drug transaction.

*Id.* at ——, 116 S.Ct. at 507.

Because a reasonable juror could conclude that Russell used and/or carried the firearm on July 25 to protect the dilaudid and facilitate its sale, we reject Russell's first assignment of error.[8]

*Quantity of Drugs Attributable to Russell*

■ Russell argues, on appeal, that he should not be held accountable for the 57.80 grams of cocaine that the confidential informant "purchased" from the FBI agent because: Russell was not charged with the crime in the superseding indictment; the transaction was not relevant conduct pursuant to U.S.S.G. § 1B1.3; and the sale was a charade.[9]

Pursuant to the Sentencing Guidelines, a defendant should be held accountable for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by [him]," U.S.S.G. § 1B1.3(a)(1)(A), and "in the case of a jointly undertaken criminal activity[,] ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, *that occurred during the commission of the offense of conviction ....*" U.S.S.G. § 1B1.3(a)(1)(B) (emphasis added). *See generally United States v. Ledezma*, 26 F.3d 636, 646 (6th Cir.) ("According to the guidelines, a defendant is accountable for all quantities of drugs with which he was directly involved and, in the case of joint criminal activity, all reasonably foreseeable quantities."), *cert. denied,* —— U.S. ——, 115 S.Ct. 349, 130 L.Ed.2d 305 (1994).

■ Though Russell properly asserts that he was not charged in the November 30 "sale" of 57.80 grams of cocaine, "a district court may consider not only the amount of drugs named in the indictment, but also quantities of drugs not specified, but that were part of the same course of conduct or common scheme or plan as the count of conviction." *United States v. West*, 948 F.2d 1042, 1045 (6th Cir.1991), *cert. denied,* 502 U.S. 1109, 112 S.Ct. 1209, 117 L.Ed.2d 447 (1992) (citations omitted). Accordingly, we must determine whether Russell's conduct (with respect to the 57.80 grams of cocaine) was taken "in furtherance of the jointly undertaken criminal activity" that occurred "during the commission of the offense of conviction" pursuant to U.S.S.G. § 1B1.3(a)(1)(B).

■ When reviewing a sentence under the guidelines, we apply a clearly erroneous standard to the district court's factual findings and a *de novo* standard to the district court's legal conclusions. *United States v. Smith*, 39 F.3d 119, 122 (6th Cir.1994).

In *United States v. Jenkins*, 4 F.3d 1338, 1346–47 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1547, 128 L.Ed.2d 197 (1994), this court held that a court must make findings with respect to both the reasonable foreseeability and the scope of a criminal enterprise before any individual conspirator may

<hr/>

8. Even if we were to find the jury's verdict inconsistent because Russell was acquitted of the charges in counts 2 and 6 of the superseding indictment, both the Supreme Court and this circuit have held that inconsistent verdicts do not provide a basis for reversal. *United States v. Powell*, 469 U.S. 57, 64–65, 105 S.Ct. 471, 476–477, 83 L.Ed.2d 461 (1984); *United States v. LeMaster*, 54 F.3d 1224, 1233 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 701, 133 L.Ed.2d 657 (1996). Instead, the proper avenue is to challenge the sufficiency of the evidence on each count. *United States v. Frazier*, 880 F.2d 878, 883 (6th Cir.1989), *cert. denied,* 493 U.S. 1083, 110 S.Ct. 1142, 107 L.Ed.2d 1046 (1990).

9. Specifically, Russell asserts that "[t]he lack of commonality of the November, 1993, undertaking with the conduct charged in the indictment is evident, and is bolstered by the lack of temporal connection with the July, 1993, drug trafficking offenses as well as with the March, 1994, drug possession offense. On the occasion when Russell was providing protection ... he was not engaged in a course of action or common scheme or plan which was a part of his drug trafficking activity [as charged in] the indictment." Appellant's Brief at 43 (footnote omitted).

The United States, in response, asserts that the "trial court did not commit clear error in using the weight of the uncharged cocaine ... because [Russell's] conduct was part of a common scheme or plan and part of a continuing course of conduct involving the sale and distribution of drugs for profit." Appellee's Brief at 8.

be held responsible for the acts of coconspirators. Indeed, in *United States v. Okayfor*, 996 F.2d 116, 121 (6th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 238, 126 L.Ed.2d 192 (1993), this court held that a defendant cannot be held accountable for all drugs involved in a conspiracy absent findings regarding the scope of the jointly undertaken criminal activity. *See generally Id.* at 120 ("[T]he scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy....").

The district court increased Russell's sentencing guideline range to reflect his participation in the bogus cocaine sale on November 30, 1993. The record reveals that Russell sold illegal drugs on July 14, July 25 and July 27, 1993.[10] Months later, on November 30, Russell agreed to "protect" the (fictitious) sale of two ounces of cocaine (in exchange for $200). Though reprehensible, Russell's conduct with respect to the 57.80 grams of cocaine that he "protected" on November 30 was not taken "in furtherance of the jointly undertaken criminal activity, that occurred *during the commission of the offense of conviction*" pursuant to U.S.S.G. § 1B1.3(a)(1)(B). Accordingly, the district court should not have considered the 57.80 grams of cocaine when determining Russell's sentence.[11]

### III.

Though we AFFIRM Russell's convictions, we VACATE his sentence and REMAND this action to the district court for resentencing in accordance with this opinion.

---

10. The superseding indictment also alleged that Russell unlawfully *possessed* cocaine when he was arrested on March 18, 1994 (Count 7).

11. Though we are also deeply troubled that the government was able to manipulate Russell's sentence by unilaterally determining the quantity of cocaine that it intended to "sell" to itself on November 30, 1993, we need not resolve this issue in light of our § 1B1.3(a)(1)(B) analysis, *supra.*