RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0112P (6th Cir.)
File Name: 01a0112p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　　*v.*　　　　　　　　　　No. 00-5144

JAMES A. KIMES,
　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 99-00029—Thomas G. Hull, District Judge.

Argued: December 6, 2000

Decided and Filed: April 13, 2001

Before: MERRITT, NELSON, and BATCHELDER,
Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Nikki C. Pierce, FEDERAL DEFENDER
SERVICES OF EASTERN TENNESSEE, Greeneville,
Tennessee, for Appellant. Sarah R. Shults, ASSISTANT
UNITED STATES ATTORNEY, Greeneville, Tennessee, for
Appellee. **ON BRIEF:** Nikki C. Pierce, FEDERAL
DEFENDER SERVICES OF EASTERN TENNESSEE,
Greeneville, Tennessee, for Appellant. Sarah R. Shults,

1

ASSISTANT UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee.

NELSON, J., delivered the opinion of the court, in which BATCHELDER, J., joined.  MERRITT, J. (pp. 18-19), delivered a separate dissenting opinion.

_____

**OPINION**

_____

DAVID A. NELSON, Circuit Judge.  This is an appeal from criminal convictions for an assault on officers of the Department of Veterans Affairs (a violation of 18 U.S.C. § 111(a)(1)) and possession on V.A. property of a knife with a blade length exceeding three inches.  (Such possession violates a rule set forth in 38 C.F.R. § 1.218(b)(39), and violation of that rule is a crime under 38 U.S.C. § 901(c).)

The defendant presents four assignments of error:  (1) that the district court erred in failing to suppress evidence consisting of two knives found in the defendant's vehicle; (2) that the district court abused its discretion in excluding proffered expert testimony concerning the defendant's mental condition; (3) that the evidence presented at trial was insufficient to sustain a conviction; and (4) that the district court abused its discretion in denying requests for a special verdict form and a jury instruction on unanimity.

Perhaps the most significant issue is the second, which turns on the question whether assaulting a federal officer is a "general intent crime" or a "specific intent crime."  This has heretofore been an open question in our circuit.

Joining the majority of circuits that have expressed an opinion on the matter, we conclude, as did the district court, that assault on a federal officer is a general intent crime.  Diminished mental capacity is not a defense to such a crime, so the district court did not err in declining to receive evidence of the defendant's allegedly diminished capacity.

intent.  Thus it seems to me that the precise mental state of the accused becomes important in such assault cases.

Up until the last two decades, during which the federal criminal law has become increasingly harsh and rigid, the presumption was in favor of a *mens rea* requirement for federal crimes.  In *Dennis v. United States*, 341 U.S. 494, 500 (1951), the Supreme Court said that "the existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence."  Whatever we decide to call the mental element required for a federal assault, whether "general," "specific" or otherwise, a distinct mental element requiring some deliberation and more than simply an intent to do an act must be present.  I, therefore, agree with those Circuits which have reached the opposite result from our Court in this case. *United States v. Simmonds*, 931 F.2d 685 (10th Cir. 1991); *United States v. Taylor*, 680 F.2d 378 (5th Cir. 1982); *United States v. Caruana*, 652 F.2d 220  (1st Cir. 1981).

I would permit a defendant to introduce evidence of diminished capacity to form the intent to commit the federal assault.  If we agree that a mental element is required to commit the crime — as it seems to me, we must — then we should permit a defendant to show that he did not possess the necessary state of mind.  Otherwise, assault and battery in federal law now becomes a mindless strict liability crime contrary to its common law origin and the enlightened policy respecting *mens rea*  followed in federal law during most of the last two centuries.  Hence, if I correctly understand what our Court has held in this case, I disagree and respectfully dissent.

---

### DISSENT

---

MERRITT, Circuit Judge, dissenting. It seems to me that, in determining the intent requirement or element of *mens rea* for assaulting a federal officer, we should return to the common law crime of assault for enlightenment and determine whether assault and battery at common law required a specific mental state, absent which there would be no crime. At common law:

> The violence or force attempted or done must be unlawful. Accordingly, it would not be an assault nor an assault and battery if the force is justifiable, in pursuance of lawful public or domestic authority, *e.g.*, where an officer makes a lawful arrest . . . or a parent or teacher moderately corrects his child or pupil, or where it is applied in necessary and reasonable defense of one's person or property . . . .

> Consent of the person against or upon whom the violence is attempted or inflicted is a defense, if the consent is valid . . . .

*Clark and Marshall, Crimes* 659 (6th ed. 1958).

Certainly, more consciousness of wrongdoing than simply an intent to do an act is necessary for the crime. The crime of assault normally requires a form of guilty knowledge — whether we call it scienter, malice, specific intent, or give it some other label. Presumably a law enforcement officer who assaults a federal officer who is resisting arrest would not have the requisite intent to do harm to another to qualify as a crime under the federal statute. A doctor who otherwise assaults such an official by amputating his foot with consent would not have the requisite state of mind. Protection of home and family from a federal official who is illegally breaking and entering would not give rise to the requisite

Accordingly, and because we find none of the defendant's remaining assignments of error persuasive, we shall affirm the convictions.

I

The defendant, James Kimes, is a veteran of the war in Vietnam. In July of 1998, after experiencing symptoms of depression and post-traumatic stress disorder, he sought treatment at the V.A. Medical Center at Mountain Home, Tennessee.

A psychology intern at the Medical Center, a woman named Christine Gerety, conducted counseling sessions with Mr. Kimes on a weekly basis. At a session held on March 25, 1999, Mr. Kimes acknowledged thoughts of suicide. Ms. Gerety concluded that he did not pose an immediate danger to himself or others, so rather than having him admitted to the hospital she proposed a "verbal safety contract." Mr. Kimes accepted, promising that if he were about to hurt himself or others he would immediately call Ms. Gerety or come to the V.A. Medical Center emergency room.

Following the March 25 session Mr. Kimes apparently moved out of his home and began living in his truck. At approximately noon on March 28, 1999, two V.A. police officers, Craig Dougherty and Pamela Ensor, observed the defendant's truck, with a blanket over the windshield, parked in a back corner of the Medical Center parking lot. Seeing movement inside the truck, Officer Dougherty knocked on the window, asked Mr. Kimes what he was doing, and offered assistance.

Mr. Kimes got out of the truck and slammed the door. He then began yelling at the officers, screaming that he had done nothing wrong and that he wanted to go to the emergency room.

Officer Dougherty approached the defendant and placed an open hand on his shoulder in an attempt to calm him. An altercation ensued, and both Mr. Kimes and the two officers

fell to the ground. During the struggle Mr. Kimes attempted to remove Officer Dougherty's gun from its holster. Mr. Kimes was then handcuffed and taken to the V.A. police station.

There Mr. Kimes was questioned by V.A. Officer Ken Warren. In the course of the questioning Mr. Kimes mentioned that he had some tools in his truck and wanted the vehicle to be secured. Officer Warren was given the keys to the truck so that this could be done.

Officer Warren turned the keys over to Officer Ensor and told her to return to the hospital and conduct a search of the truck. She did so. The search disclosed a bayonet on the floorboard and a filet knife on a seat cushion. Both implements had blades over three inches long. Officer Ensor removed the knives from the truck before the vehicle was impounded and towed away.

Mr. Kimes was indicted a month later, and the case ultimately went to trial. As part of his defense Mr. Kimes sought to introduce medical evidence regarding his treatment for depression and post-traumatic stress disorder. Mr. Kimes' medical experts were prepared to testify that when Officer Dougherty touched him, Mr. Kimes could have experienced a "hyper-startled reaction" that robbed him of the ability to control his actions. The defendant's theory was that this prevented him from forming the necessary *mens rea* to violate 18 U.S.C. § 111(a)(1).

The district court ruled the proffered testimony inadmissible on two grounds. First, answering a question left open by this court in *United States v. Farrow*, 198 F.3d 179 (6th Cir. 1999), the district court held that an assault on a federal officer in violation of § 111 is a general intent crime as to which diminished capacity is not a defense.[1] In the

---

[1] "While this Court has not yet addressed the question," our *Farrow* opinion observed, "other courts have concluded that § 111(a)(1) sets forth a 'general intent' rather than a 'specific intent crime.' To establish

A specific unanimity instruction is ordinarily unnecessary unless: "(1) a count is extremely complex; (2) there is variance between the indictment and the proof at trial, or (3) there is a tangible risk of jury confusion." *United States v. Sanderson*, 966 F.2d 184, 187 (6th Cir. 1992) (citing *United States v. Duncan*, 850 F.2d 1104, 1114 (6th Cir.1988)). A defendant charged with violating § 111 is not entitled to a specific unanimity instruction unless the defendant's conduct constituted "two separate and distinct offenses," not merely "two phases of a single assault." *United States v. Hood*, 210 F.3d 660, 663 (6th Cir. 2000), quoting *United States v. Segien*, 114 F.3d 1014, 1022 (10th Cir. 1997). None of these conditions was met in the case at bar; there was no instructional error and, obviously, no error in not requiring a special verdict. (As to the latter point, we note also that this court has observed that "[i]n general, special verdict forms are not favored and 'may in fact be more productive of confusion than clarity.'" *United States v. Wilson*, 629 F.2d 439, 444 (6th Cir. 1980) (quoting 8A Moore's Federal Practice and Procedure § 31.02(3) at 31-9).)

**AFFIRMED.**

the knives in evidence. Our resolution of the evidentiary question disposes of this branch of the insufficiency claim.

D.  Special Verdict Forms and Instructions on Unanimity.

During his trial, Mr. Kimes points out, the government presented evidence as to all six modalities (assaulting, resisting, opposing, impeding, intimidating, and interfering) by which a defendant can violate § 111(a)(1). It follows, Mr. Kimes asserts, that the jury should have been told it could convict him only if the jurors were unanimous on which type of conduct occurred – and the alleged unanimity requirement should have been tested, he suggests, by a special verdict form.

"The trial court is 'vested with broad discretion in formulating its charge and will not be reversed unless the charge fails accurately to reflect the law.'" *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir.1988)(citation omitted). Accordingly, jury instructions are reviewed for an abuse of discretion. See *United States v. Hood*, 210 F.3d 660, 662 (6th Cir. 2000). And the trial court's instructions should be read "as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury." See *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991).

We conclude that the instructions in the case at bar were adequate as given. The jury was told that in enacting § 111, "Congress created a single crime of harming or threatening a federal official and specified six ways by which the crime could be committed. Now, proof beyond a reasonable doubt of any of these six methods will support a finding of guilt in regard to this crime." The jury was also told "Now, your verdict, whether it's guilty or not guilty, must be unanimous. To find the defendant guilty, every one of you must agree that the government has overcome the presumption of innocence with evidence that proves his guilt beyond a reasonable doubt. * * * Either way, guilty or not guilty, your verdict must be unanimous." These instructions were sufficient to apprise the jury of the applicable law.

alternative, the district court held the proffered testimony inadmissible under Rule 704(b), Fed. R. Evid., insofar as the witnesses proposed to express an opinion that the defendant lacked the requisite *mens rea*.

Deprived of his diminished capacity defense, Mr. Kimes fell back on a claim of self-defense; he maintained that he was simply responding to a use of excessive force by Officer Dougherty. The jury rejected this claim and found Mr. Kimes guilty on both counts of the indictment. The district court sentenced him to pay a $600 fine and serve two years of probation on the assault count. The court sentenced him to "time served" (the four days he had spent in the local jail) on the weapons count.

II

A.  Motion to Suppress the Knives.

Prior to trial the defendant moved for suppression of the knives on the ground that the warrantless search in which they had been discovered violated the Fourth Amendment. A magistrate judge agreed that there had been a violation of the Fourth Amendment, and this would normally have been sufficient to trigger the exclusionary rule adopted in *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). The magistrate further concluded, however, that the knives were admissible under the "inevitable discovery" exception to the exclusionary rule. The magistrate's conclusions were adopted by the district judge.

Neither the magistrate nor the district judge addressed the obvious possibility that the search was consensual. This issue has not been briefed or argued on appeal. For purposes of this opinion, then, we shall assume, without so deciding, that a violation of the Fourth Amendment did occur. Such a

---

general intent, the Government need not show that the defendant intended to injure a federal officer, but only 'the knowing commission of an act that the law makes a crime.'" *Id*. at 187 n. 7 (citations omitted).

violation would require suppression of the knives unless they were destined to have been discovered – lawfully – in any event.

"The inevitable discovery doctrine, an exception to the exclusionary rule, allows unlawfully obtained evidence to be admitted at trial if the government can prove by preponderance that the evidence inevitably would have been acquired through lawful means." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)). Proof of inevitable discovery "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment . . ." *Nix*, 467 U.S. at 444 n. 5. "The exception requires the . . . court to determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." *United States v. Eng*, 971 F.2d 854, 861 (2d Cir.1992), *cert. denied*, 510 U.S. 1045 (1994).

Viewing the situation as it existed just before Officer Ensor's search, we think it clear that the government has met its burden of demonstrating that the evidence would inevitably have been discovered through lawful means. Established policy called for the removal of vehicles parked on V.A. property and not belonging to patients or visitors. That such a policy is consistent with legitimate public safety and community caretaking purposes is beyond question. See *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). Here the government has shown without contradiction that the hospital parking lot was not a secure place and that the integrity of the truck could not be ensured there. The government has further shown, again without contradiction, that leaving the truck in the parking space for an undetermined period of time would have meant denial of access to the parking space by other visitors.

Established V.A. policy also prescribed an inventory search prior to removal of a vehicle. Officer Norwood testified that the purpose of conducting such a search was to protect

official still would be impeded in the performance of his official duties." *United States v. Jennings*, 855 F.Supp. 1427, 1440 (M.D.Pa. 1994).

In sum, we conclude that the crime established in 18 U.S.C. § 111(a) is a general intent crime as to which evidence of diminished capacity is not admissible. This conclusion obviates any need for us to address the district court's alternative holding, which was that admission of the proffered evidence was precluded by Rule 704(b), Fed. R. Evid.

C.  Sufficiency of the Evidence.

The defendant maintains that the evidence offered at trial was insufficient to support a conviction on either count of the indictment. In reviewing the sufficiency of the evidence for a criminal conviction, this court must determine whether, taking the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 315 (1979); *United States v. Russell*, 76 F.3d 808, 811 (6th Cir. 1996).

As to the first count, which charged him with forcibly assaulting V.A. police officers in violation of 18 U.S.C. § 111(a)(1), Mr. Kimes argues that the evidence showed he was defending himself against an excessive use of force by Officer Dougherty. The only evidence supporting this contention was the testimony of Burt Cloninger, a retired FBI agent, who opined that Officer Dougherty had used excessive force by placing his hand on the defendant's shoulder. This testimony was rebutted by FBI Agent Lane Rushing, who expressed the opinion that Officer Dougherty acted appropriately. Examining the conflicting evidence in the light most favorable to the prosecution, we see no reason why a rational trier of fact could not have chosen to accept Agent Rushing's testimony and reject Mr. Cloninger's.

As to the count relating to the knife possession, Mr. Kimes argues simply that there would have been no evidence to support a conviction but for the allegedly improper receipt of

his diminished mental capacity.  The first paragraph of 18 U.S.C. § 2113(a) begins thus:

"Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . ."

In contrast, the second paragraph begins thus:

"Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, *with intent to commit* in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny . . . ." (Emphasis supplied.)

Based on the differing language in the two paragraphs, we upheld the district court's evidentiary ruling:  because "Congress showed 'careful draftsmanship' by including an intent requirement in the second paragraph, but not the first paragraph, of § 2113(a), we hold that the first paragraph of § 2113(a) describes a general intent crime." *Gonyea*, 140 F.3d at 654.  (Citations omitted.)

Consideration of the overall purpose of § 111(a)(1) also supports the conclusion that the statute sets forth a general intent crime.  In enacting this section, as the Supreme Court has recognized, "Congress intended to protect both federal officers and federal functions, and . . . furtherance of the one policy advances the other." *Feola*, 420 U.S. at 679. Categorizing § 111(a)(1) as a general intent crime furthers the congressional objective: "If a person acts in a manner which is assaultive toward a federal official, without specifically intending harm or the apprehension of imminent harm, the

personal property inside the vehicle while it was in police custody and to protect the V.A. from claims of lost or stolen property.  Under *Opperman*, a search conducted for such a purpose meets the constitutional test of reasonableness.

Finally, the magistrate found that the knives were in plain sight when Officer Ensor entered the truck.  This finding was not clearly erroneous.  Accepting it as true, we conclude that if the knives had not already been removed by Officer Ensor they would inevitably have been discovered in an inventory search conducted in connection with the removal of the vehicle.  Proof that contraband would have been detected in "an inventory search that would inevitably follow seizure of a car" is sufficient to invoke the inevitable discovery exception to the exclusionary rule.  See *Kennedy*, 61 F.3d at 498.

The defendant contends that the inevitable discovery doctrine should not be applied in this case because V.A. police officers had too much discretion in deciding whether to impound the truck and conduct an inventory search.  In this connection Mr. Kimes points out that on some occasions the V.A. permitted family members or friends to remove a vehicle if its owner or operator was unable to do so.  The defendant also complains that a V.A. officer conducting an inventory search has discretion to refrain from recording the presence of items not considered valuable.

The defendant's arguments are not persuasive.  Discretion as to impoundment is permissible "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Bertine*, 479 U.S. 367, 375-376 (1987). Here, as we gather, V.A. police sometimes permitted vehicles to be picked up by a driver's friends and relations if they were already present or if the driver could contact them and get them to come to the facility promptly.  Mr. Kimes suggests that rather than towing his truck, the officers should have taken it upon themselves to call his wife and ask her to get the

vehicle. He cites no authority compelling such a conclusion, and we are aware of none.

As to the comprehensiveness of the inventory list, an officer's use of discretion in implementing agency guidelines regarding the conduct of an inventory search does not necessarily violate the Fourth Amendment. See *Florida v. Wells*, 495 U.S. 1, 4 (1990) ("[I]n forbidding uncanalized discretion to police officers conducting inventory searches, there is no reason to insist that they be conducted in a totally mechanical 'all or nothing' fashion"). The V.A.'s policy of listing only "valuable" items is not impermissible, and neither is a measure of flexibility regarding the implementation of that policy. The post-discovery listing of items discovered in a search, moreover, has no pertinent connection to the discovery itself.

Mr. Kimes implies that the decision to impound the truck and conduct an inventory search in the case at bar was simply a pretext for sanitizing the presumptively illegal search conducted earlier. The record does not compel a finding of pretext, and the district court made no such finding. The Fourth Amendment permits impoundment decisions and inventory searches that are objectively justifiable, moreover, regardless of an officer's subjective intent. See *Whren v. United States*, 517 U.S. 806, 812 (1996). The impoundment/inventory decision in the case at bar was objectively justifiable, and the trial court's application of the inevitable discovery doctrine was entirely proper.

B.    Exclusion of Expert Testimony – General vs. Specific Intent.

The district court's decision not to receive the testimony of medical experts who would have suggested that the defendant lacked control over his actions stemmed in part from the court's view that the crime defined in 18 U.S.C. § 111(a)(1) is a general intent crime as to which diminished capacity is not a defense. See *United States v. Gonyea*, 140 F.3d 649, 651 (6th Cir. 1998) (holding that diminished capacity is a defense only to specific intent crimes). Mr. Kimes contends

This question is apparently one of first impression for us. Four of our sister circuits, however, have found that no additional purpose need be shown under § 111(a)(1); these circuits have held that the statute creates a general intent crime with respect to which evidence of diminished capacity is not admissible. See *United States v. Ricketts*, 146 F.3d 492, 496 (7th Cir. 1998); *United States v. Kleinbart*, 27 F.3d 586, 592 (D.C.Cir. 1994); *United States v. Oakie*, 12 F.3d 1436, 1443 (8th Cir. 1993); and *United States v. Jim*, 865 F.2d 211, 213 (9th Cir.), *cert. denied*, 493 U.S. 827 (1989). Three other circuits – without much analysis, it is fair to say – seem to have reached the opposite result. See *United States v. Simmonds*, 931 F.2d 685, 688 (10th Cir.), *cert. denied*, 502 U.S. 840 (1991); *United States v. Taylor*, 680 F.2d 378, 381 (5th Cir. 1982); and *United States v. Caruana*, 652 F.2d 220, 222 (1st Cir. 1981).

In siding with the circuits that have read § 111(a)(1) as defining a general intent crime, we are guided first and foremost by the fact that § 111(a)(1) contains no language suggesting that specific intent must be shown. It is plain from an examination of other federal statutes that Congress is fully cognizant of the general intent/specific intent dichotomy. When it intends to create a specific intent crime, Congress explicitly says so. See, for example, 18 U.S.C. § 113(a)(1), which provides that "assault *with intent* to commit murder" in the special maritime and territorial jurisdiction of the United States is a crime punishable by up to 20 years imprisonment. (Emphasis supplied.) Under 18 U.S.C. § 113(a)(3), similarly, "[a]ssault with a dangerous weapon, *with intent* to do bodily harm, and without just cause or excuse . . ." is made punishable by up to 10 years imprisonment. (Emphasis supplied.)

Our precedents give due consideration to the ability of Congress to distinguish between general intent and specific intent. Consider *Gonyea*, where the trial court, believing that bank robbery in violation of the first paragraph of 18 U.S.C. § 2113(a) is a general intent crime, had declined to let a defendant charged under that paragraph present evidence of

be faced separately with respect to each material element of the crime." (Citations omitted.)  Section 111(a)(1) contains four distinct elements; the government must show that the defendant: (1) forcibly (2) assaulted, resisted, opposed, impeded, intimidated, or interfered with (3) a federal officer (4) in the performance of his duties.  *Feola* makes clear that at least as to the latter two elements, only general intent is needed.  The defendant need have no special purpose to assault a federal officer in the performance of his duties; it is enough that the defendant intends to assault someone.  *Feola* may leave room for argument, however, as to what mental state is required in connection with the first two elements.

Here the defendant focuses on the "forcibly"[4] element of § 111(a)(1), contending that its inclusion requires a showing of "intent, deliberation, and voluntariness."  Even to show general intent, however, "the Government must prove beyond a reasonable doubt that the defendant *knowingly, consciously, and voluntarily* committed an act which the law makes a crime."  *Kleinbart*, 27 F.3d at 592 (emphasis added).  What sets  general intent apart from specific intent is that "general intent may be inferred from the doing of the act."  *Id*.  In contrast, specific intent requires a showing of "bad purpose." *Id*. at 592, n. 4.  See also *Gonyea*, 140 F.3d at 653 (holding that to violate a specific intent statute, the defendant must act "with the purpose of violating the law").

The question with which we are left is this:  for a violation of § 111(a)(1) to occur, is it sufficient for a defendant to act, regardless of the reason for the action, in such a way as to assault, resist, oppose, impede, intimidate, or interfere with a federal officer in the performance of his duties, or, is it also necessary for the defendant to have a specific "bad" purpose?

---

[4] The term "forcibly" has been defined to mean making "such a threat or display of physical aggression  . . . as to inspire fear of pain, bodily harm, or death."  See *United States v. Walker*, 835 F.2d 983, 987 (2d Cir.1987).

that evidence of his diminished capacity should have been admitted because his assault on the officers was not a crime under § 111(a)(1) absent specific intent.

It is important in this connection to distinguish between two different types of mental defect defense. The first, sometimes called the "diminished responsibility" defense, applies where the defendant's mental condition "completely absolves him of criminal responsibility regardless of whether or not guilt can be proven." *U.S. v. Fazzini*, 871 F.2d 635, 641 (7th Cir.), *cert. denied*, 493 U.S. 982 (1989).  The second, often referred to as the "diminished capacity" defense, applies "where the defendant claims only that his mental condition is such that he or she cannot attain the culpable state of mind required by the definition of the crime." *Fazzini*, 871 F.2d at 641.

In 1984, with passage of the Insanity Defense Reform Act, 18 U.S.C. § 17, Congress impliedly placed significant restrictions on the use of mental defect evidence.[2]  The statute makes insanity a defense, but requires the defendant to satisfy the M'Naghten standard – *i.e.,* the defendant must show, by clear and convincing evidence, that he was "unable to appreciate the nature and quality or the wrongfulness of his acts."  Section 17 further provides that "[m]ental disease or defect does not otherwise constitute a defense."

Like other courts –  see *United States* v. *Twine*, 853 F.2d 676, 679 (9th Cir. 1988), and *United States v. Pohlot*, 827 F.2d 889, 897 (3d Cir.1987), *cert. denied*, 484 U.S. 1011

---

[2] 18 U.S.C. § 17. provides:

"(a) Affirmative defense. – It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

(b) Burden of proof. – The defendant has the burden of proving the defense of insanity by clear and convincing evidence."

(1988) – we have continued to permit the introduction of evidence of diminished capacity for the purpose of negating the *mens rea* element of certain crimes. See *United States v. Newman*, 889 F.2d 88, 91 (6th Cir.1989), *cert. denied*, 495 U.S. 959 (1990). In so doing, however, we have adhered to the view that "diminished capacity may be used only to negate the mens rea of a *specific intent* crime." *Gonyea*, 140 F.3d at 650 (emphasis added).

Here the defendant proffered expert psychiatric testimony tending to show that his psychological problems left him unable to control his actions during the altercation with Officers Dougherty and Ensor. On its face, the proffered testimony might have seemed designed to establish the foundation for an insanity defense. The defendant chose not to pursue an insanity defense, however, offering the testimony only to "negate the mental states required for the offense . . . ."

The difference is more than semantic. Had Mr. Kimes elected to pursue an insanity defense, 18 U.S.C. § 17 would have assigned him the burden of proving by clear and convincing evidence that he was in fact insane at the time of the altercation. Under a theory of diminished capacity, however, the testimony, if admissible, need only have cast a reasonable doubt on the government's proof that Mr. Kimes had the necessary *mens rea*.

As we have said, evidence of diminished capacity may be used to negate the *mens rea* of specific intent crimes only. Mr. Kimes' proffered testimony was only admissible, therefore, if § 111(a)(1) requires a showing of specific intent. The district court held that it does not.

The difference between a specific intent crime and a general intent crime was spelled out in *Gonyea*, where we explained that "a specific intent crime is one that requires a defendant to do more than knowingly act in violation of the law. The defendant must also act with the purpose of violating the law. The violation of a general intent statute, by contrast, requires only that a defendant 'intend to do the act

that the law proscribes.'" 140 F.3d at 653. (Citations omitted.) In other words, "a general intent crime requires the knowing commission of an act that the law makes a crime. A specific intent crime requires additional 'bad purpose.'" *United States v. Kleinbart*, 27 F.3d 586, 592 (D.C.Cir. 1994), n.4 (citations omitted).

Section 111(a)(1) provides as follows: "Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [federal officer or agency employee] while engaged in or on account of the performance of official duties . . . shall . . . be fined under this title or imprisoned . . . ." There was a time when this language would have left no possible room for doubt that only general intent was required. See *United States v. Feola*, 420 U.S. 671, 684 (1975), where the Supreme Court declared that

> "in order to effectuate the congressional purpose of according maximum protection to federal officers by making prosecution for assaults upon them cognizable in the federal courts, § 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer. All that the statute requires is an intent to assault, not an intent to assault a federal officer." *Id.*[3]

In *United States v. Bailey*, 444 U.S. 394, 406 (1980), however, the Supreme Court held that in determining whether an offense is a general intent crime or a specific intent crime, "clear analysis requires that the question of the kind of culpability required to establish the commission of an offense

---

[3]See also *United States v. Boone*, 738 F.2d 763 (6th Cir. 1984), a decision affirming the conviction of a man accused of violating 18 U.S.C. § 111 by knocking down a judge of this court and snatching her purse as she was walking to the courthouse on a Sunday evening to complete her preparations for Monday's oral arguments. Mr. Boone was obviously unaware that his victim was a federal judge, so he could have had no specific intent to assault a judicial officer – but, as the court implicitly held, a showing of specific intent was not required. Boone's general intent to commit an assault was sufficient.