**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jermaine TARPKIN, Defendant–
Appellant.**

**No. 01–6515.**

United States Court of Appeals,
Sixth Circuit.

June 19, 2003.

Before BOGGS and DAUGHTREY,
Circuit Judges; and OBERDORFER,
District Judge.*

OBERDORFER, District Judge.

Jermaine Tarpkin appeals his four-count
conviction, for which he was sentenced to a
total of 195 months of imprisonment. He

---

* The Honorable Louis F. Oberdorfer, United
States District Judge for the District of Co-
lumbia, sitting by designation.

challenges the sufficiency of the evidence for each count of conviction. For the reasons set forth below, we **AFFIRM** the judgment of conviction.

# I. BACKGROUND

## A. Facts

Unless otherwise noted, the following facts are undisputed or based on uncontroverted testimony. On April 3, 2001, Tarpkin, the defendant, had arranged to visit his minor child, who resided with the child's mother, Pamela McIntosh. Tarpkin was at his own mother's house when McIntosh, accompanied by her 80–year–old aunt, came to pick him up. On the way to McIntosh's residence, Tarpkin initially rode in the back seat, but moved to the front after the aunt was dropped off.

The afternoon visit at McIntosh's house did not go well. Tarpkin and McIntosh argued; Tarpkin also cursed at her "constantly," and, at one point, McIntosh hid in her bedroom to avoid him. McIntosh considered calling the police, but decided not to because her disabled, five-year-old son was afraid of the police. Eventually, McIntosh asked Tarpkin to leave, telling him that she would pay for a cab. Tarpkin insisted that she drive him home. McIntosh asked her neighbor, Connie Miles, to ride with them. When Miles arrived, McIntosh asked her if she had a gun or a knife because she was so upset she wanted to shoot him.

On the trip back to Tarpkin's mother's house, Tarpkin sat in the front with his book bag, while Miles sat in the back. As they were driving, Tarpkin argued with McIntosh and poked her in the face. McIntosh finally pulled over into a convenience store parking lot, telling Tarpkin that she was going to call the police. Tarpkin then showed her that he had a bag of marijuana in his pocket, apparently hoping to deter her. McIntosh nonetheless went inside the store and called the police, telling them that she wanted Tarpkin out of her car. As the police arrived, McIntosh looked out to her car and saw Tarpkin, still sitting in the front passenger seat, "bend down" a couple of times. Miles, still sitting in the back seat, saw Tarpkin reach under the front seat twice with his right hand. Tarpkin then got out of the car and tried to "sweet talk" McIntosh into coming to talk to him.

When it appeared that the police were going to leave without doing anything. McIntosh told them that Tarpkin had had marijuana in his jacket and that it was probably now in her car. She then gave the police permission to search the car. On the floor of the front passenger side of the car, under Tarpkin's book bag, the police found a plastic bag containing 62.8 grams of marijuana. On Tarpkin's person, they found a box of cigars, with one of the four cigars missing. In the car's ashtray, they found a partially smoked "blunt," a marijuana cigar, which Tarpkin admitted was his, along with a few marijuana cigarettes. And under the front passenger seat, they found a loaded Ruger .45–caliber semi-automatic pistol, lying as if the person who put it there had been holding it in his/her right hand. Tarpkin denied that the gun was his. Tarpkin was arrested at the scene.

## B. Procedural History

On April 11, 2001, a grand jury returned a five-count indictment against Tarpkin. He was charged with: (1) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g); (2) being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g); (3) possession of a stolen firearm in violation of 18 U.S.C. § 922(g); (4) possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a) and (b)(1)(C); and (5) possession of a firearm in furtherance of a drug traf-

ficking offense in violation of 18 U.S.C. § 924(c).

Trial commenced on June 14, 2001. In addition to the facts described above, there was testimony from the government's lay witnesses that: Tarpkin had sold marijuana in the past; McIntosh did not own a gun; McIntosh had never seen Tarpkin with a gun; McIntosh had cleaned out her car the night before Tarpkin was in it; no one had been in the car in the interim except her 80-year old aunt; the seized firearm had been stolen in November 2000; McIntosh had smoked and sold marijuana in the past; a single person smoking three blunts a day could use a dime bag (approximately 2 grams) of marijuana; and Tarpkin had called McIntosh from the police station after his arrest and told her that because of what she had told the police they now knew about the robbery and where the gun came from. The government's uncontroverted expert witnesses testified that: the amount of marijuana seized was a "distribution amount"; the marijuana was probably in a single bag simply because it had been recently purchased and not yet divided up for resale; the lack of cash was consistent with a recent purchase; the lack of drug-trafficking paraphenalia was not surprising given that Tarpkin was in McIntosh's car at the time the marijuana was seized; most drug dealers carry firearms; and the firearm seized was a large-caliber gun that a woman would be unlikely to use.

After the close of the government's case, Tarpkin filed a motion for a judgment of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Tarpkin then put on his defense, which was limited to reading into the record a written stipulation that he was left-handed. He did not renew his Rule 29 motion at the close of his case.

The case went to the jury. The jury was instructed that if it found Tarpkin not guilty of possession of marijuana with intent to distribute, it could convict for the lesser included offense of simple possession. The jury convicted on all counts, as indicted, except for Count 2, the charge of being a felon in possession of ammunition.[1]

On October 19, 2001, the district court sentenced Tarpkin to 195 months of imprisonment. The defendant filed a timely Notice of Appeal on October 30, 2001.

## II. DISCUSSION

### A. Standard of Review

The parties disagree about the applicable standard of review. Generally, a challenge to the sufficiency of the evidence supporting a criminal conviction requires the reviewing court to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the prosecution proved the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Russell*, 76 F.3d 808 (6th Cir.1996). Here, however, the government contends that because Tarpkin failed to renew his Rule 29 motion at the close of his case, his conviction can only be reversed if the failure to do so would amount to a "manifest miscarriage of justice." *See United States v. Hernandez*, 227 F.3d 686, 694 (6th Cir.), *cert. denied*, 534 U.S. 831, 122 S.Ct. 76, 151 L.Ed.2d 40 (2001). As Tarpkin's defensive case was *de minimis*, consisting solely of reading into the record

---

1. For reasons that are not clear from the record, the district court had ruled that if the jury found the defendant guilty of possession of a firearm by a convicted felon (Count 1), they could not also find him guilty of possession of ammunition by a convicted felon (Count 2).

a written stipulation that Tarpkin was left-handed, the futility of renewing his Rule 29 motion was surely apparent. Under these limited circumstances, a defendant cannot fairly be penalized for failing to renew a Rule 29 motion. Accordingly, we will apply the less deferential standard of review.

## B. Possession with Intent to Distribute Marijuana

In order to convict a defendant of possession with intent to distribute marijuana, the government must prove that the defendant (1) knowingly, (2) possessed marijuana, (3) with the intent to distribute it. Tarpkin contends that his conviction on this count must be reversed because there was insufficient evidence that he intended to distribute the seized marijuana.

■ The critical evidence, viewed in the light most favorable to the prosecution, shows that: Tarpkin was carrying a firearm; drug dealers often carry firearms in close proximity to the drugs they need to protect; Tarpkin had sold marijuana in the past; the absence of paraphernalia typically associated with an intent to distribute, such as packaging materials, scales, a cell phone, cash, or ledger sheets, was not unusual given the location of the seizure (another person's car) and the likelihood that the purchase was recent; the amount of marijuana seized was a "distribution amount"; the packaging was consistent with a recent purchase not yet divided for resale; and the absence of cash was also consistent with a recent purchase. As Tarpkin points out, the evidence also shows that: Tarpkin's plan for that day was to visit his son; he was smoking the seized marijuana in "blunts", which use a much greater quantity of marijuana than the typical "joint"; and 62 grams of marijuana could be for personal use. However, faced with all of the evidence described above, a rational trier of fact could have

found beyond a reasonable doubt that Tarpkin had an intent to distribute. Accordingly, Tarpkin's conviction on this count will be affirmed.

## C. Felon in Possession of a Firearm

In order to convict a defendant of being a felon in possession of a firearm, the government must prove (1) a qualifying prior felony conviction, (2) knowing possession of the firearm; and (3) that the firearm has traveled in or affected interstate commerce. Tarpkin contends that his conviction on this count must be reversed because there was insufficient evidence that he possessed the seized firearm. We disagree.

■ The critical evidence, viewed in the light most favorable to the prosecution, shows that: the gun was found directly under the passenger seat of the car, where Tarpkin had been sitting, immediately adjacent to his backpack and in a location in the car accessible only to him: the gun was large-caliber, unlikely to be used by a woman; Tarpkin showed knowledge of the gun when he called McIntosh from jail; McIntosh had thoroughly cleaned the car the previous evening and there was no gun in it at that time; no one had been in McIntosh's car since it was cleaned except her 80–year–old aunt; McIntosh did not own a gun or have a gun in her possession when she set out to drive Tarpkin home; Tarpkin twice reached under the passenger seat, where the gun was found; and Tarpkin exited from the car and tried to "sweet talk" McIntosh because he was afraid of what the police would find in the car. As Tarpkin points out, the evidence also shows that: the gun was positioned for use by a right-handed person; Tarpkin is left-handed; and neither McIntosh nor Miles saw Tarpkin with a gun on the day in question. However, faced with all of this evidence, a rational trier of fact could

also have found beyond a reasonable doubt that Tarpkin possessed the gun. Accordingly, Tarpkin's conviction on this count will be affirmed.

### D. Possession of a Firearm in Furtherance of a Drug Trafficking Offense

In order to prove possession of a firearm in furtherance of a drug trafficking offense, the government must prove that the defendant (1) committed a drug trafficking offense that may be prosecuted in federal court, and (2) knowingly possessed a firearm to further the purposes of the offense. Tarpkin contends his conviction on this count must be reversed because there was insufficient evidence that he intended to distribute the seized marijuana (necessary for proof of a drug trafficking offense) and/or there was insufficient evidence that he possessed the seized firearm. We disagree.

As previously discussed, there was sufficient evidence that Tarpkin had an intent to distribute, *see supra* section B, and that he possessed the firearm, *see supra* section C. Accordingly, Tarpkin's conviction on this count will be affirmed.

### E. Possession of a Stolen Firearm

In order to convict a defendant of possession of a stolen firearm, the government must prove (1) that the defendant knowingly possessed a firearm, (2) that the firearm was stolen, and (3) that the firearm had been shipped or transported in interstate commerce; and (4) that the defendant knew or had reasonable cause to believe that the firearm was stolen. Tarpkin contends that his conviction on this count must be reversed because there was insufficient evidence that he possessed the gun and/or knew that the gun was stolen. We disagree.

Again, as previously discussed, there was sufficient evidence that Tarpkin possessed the gun. *See supra* section C. On the issue of whether Tarpkin knew the gun was stolen, the critical evidence, viewed in the light most favorable to the prosecution, shows that: the gun was stolen; there was physical evidence that the serial number of the gun had been filed off; and Tarpkin made a call to McIntosh from jail that revealed that he knew the gun had been obtained during a burglary. Faced with this evidence, a rational trier of fact could have found beyond a reasonable doubt that Tarpkin knew the firearm was stolen. Accordingly, Tarpkin's conviction on this count will be affirmed.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** Tarpkin's judgment of conviction on all counts.