*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0092p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee*,

                                                          No. 11-2429

        *v.*

JERMAINE BYRON WOODS,
                    *Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:10-cr-323-1—Paul Lewis Maloney, Chief District Judge.

Argued: January 23, 2013

Decided and Filed: April 3, 2013

Before: CLAY, GILMAN, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Anne Y. Lee, COVINGTON & BURLING LLP, Washington, D.C., for Appellant. Mark A. Totten, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Anne Y. Lee, Elliott Schulder, Mark D. Taticchi, COVINGTON & BURLING LLP, Washington, D.C., for Appellant. Mark A. Totten, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

        GILMAN, J., delivered the opinion of the court, in which McKEAGUE, J., joined. CLAY, J. (pp. 12-13), delivered a separate concurring opinion.

————————————

**OPINION**

————————————

RONALD LEE GILMAN, Circuit Judge.  Jermaine Byron Woods entered a conditional guilty plea to the charges of possessing crack cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), and of possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).  He was sentenced to 108 months in prison.

Woods contends on appeal that his initial incriminating statement, as well as the discovery of a gun and drugs in his car, were the products of a custodial interrogation conducted in violation of his Fifth Amendment rights as articulated in *Miranda v. Arizona*, 384 U.S. 436 (1966).  His conditional guilty plea preserved the right to appeal the district court's denial of his motion to suppress the statement and the physical evidence.  We conclude that the arresting officer was not required to give Woods the *Miranda* warnings before asking "What is in your pocket?" upon encountering a hard lump in Woods's clothing during the course of a lawful patdown incident to the arrest. We therefore **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

Woods's conviction arose from circumstances surrounding a traffic stop on June 15, 2010.  On that day, Officer Luke Mardigian saw a red Pontiac speeding along West Edgewood Boulevard in Lansing, Michigan.  The officer did not catch up to the Pontiac in time to pull it over, but pursued the car to a nearby residential parking lot where it had just been parked.  As the occupant (later identified as Woods) began exiting the car, Officer Mardigian turned on his cruiser's overhead light and ordered Woods to re-enter the Pontiac and place his hands on the steering wheel.  Woods did not immediately comply; he would neither put his feet back into the car nor place his hands on the steering wheel, and he repeatedly reached down toward the passenger side of the

car. Concerned that Woods might have a weapon inside, Officer Mardigian eventually drew his gun, which caused Woods to finally comply with the officer's demands. Officer Mardigian then lowered his weapon, approached the car, advised Woods that he had been caught speeding, and asked Woods for identification. Woods provided a false name and said that he did not have any identification. Officer Mardigian decided at that point to arrest Woods for the offense of driving without a license. But in light of Woods's noncompliant behavior, Officer Mardigian waited for backup before making the arrest.

Officer Brian Rasdale soon arrived on the scene to provide backup, and the two officers approached the driver's side of the car to arrest Woods. Woods reacted by taking his right hand off the steering wheel and again reached toward the passenger side of the car. At that point the officers grabbed Woods by the wrists and pulled him out of the vehicle. They ordered him to get on his knees and then on his abdomen, and when he lay face down on the ground they handcuffed him behind his back. Officer Mardigian began to pat Woods down once the officers returned him to a standing position. In the course of the patdown, Officer Mardigian felt a hard lump in one of Woods's pockets and asked him "What is in your pocket?". Woods responded that he was "bogue," which is a street term meaning "in possession of something illegal," as in weapons or narcotics. Officer Mardigian then sought to confirm that he had correctly heard the response, and Woods repeated "I'm bogue." At that point, Officer Mardigian, who was concerned that Woods might be carrying a gun, asked him whether the contraband was drugs or a gun. Woods responded that it was a gun. Officer Mardigian next asked whether the gun was on Woods's person or in his car, to which Woods responded that it was in the car. (The object in Woods's pocket turned out to be his keys.)

Woods was then subjected to a thorough in-custody search and placed in the back of Officer Mardigian's cruiser. After securing Woods in the cruiser, Officer Mardigian approached the Pontiac. Looking in through the passenger's side window, the officer observed what looked like a handgun lying on the floorboard. Officer Mardigian then

searched the car and recovered the gun, as well as a plastic bag containing crack cocaine. At no point during the entire episode were the *Miranda* warnings administered.

Based on the evidence uncovered during the search, the government indicted Woods in November 2010 on three counts of drugs and firearm charges. Woods moved to suppress his incriminating "bogue" statement, the drugs, and the gun. At the conclusion of a hearing held in January 2011, the district court denied the motion from the bench. Woods pleaded guilty to the charges shortly thereafter, preserving his right to appeal the denial of his motion to suppress. He has now exercised that right.

## II.  ANALYSIS

In adjudicating an appeal from the denial of a motion to suppress, we review the district court's factual findings under the clear-error standard and its legal conclusions de novo. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003). We consider the evidence in the light most favorable to the government. *Id.*

Woods contends on appeal, as he did below, that his statement that he was "bogue" was the product of an unwarned custodial interrogation and therefore inadmissible under *Miranda*. He argues that the gun and the cocaine are also inadmissible because they were discovered pursuant to his inadmissible incriminating statement and are therefore "the fruits of a poisonous tree." Woods does not dispute the legality of his arrest or of the search incident to the arrest.

The district court rested its denial of Woods's motion to suppress on the twin rationales that the statement was obtained lawfully under *Terry v. Ohio*, 392 U.S. 1 (1968), and that the physical evidence was admissible under the plain-view doctrine. These rulings, however, conflate the applicable Fifth Amendment analysis with inapposite Fourth Amendment doctrine, and the government accordingly makes no effort to defend the district court's rationales on appeal. Instead, the government bases its contention that suppression was not warranted on four alternative grounds. They are, in order of analytical priority, that: (1) the officer's question "What is in your pocket?"

did not amount to an "interrogation" at all, so the requirement of reciting the *Miranda* warnings was not triggered; (2) even if there was a custodial interrogation and *Miranda* was triggered, the failure to recite the *Miranda* warnings was justified due to a concern for the officer's safety; (3) even if *Miranda* was violated, the physical evidence should not be suppressed because the Fifth Amendment does not require the suppression of the physical, nontestimonial fruits of a *Miranda* violation; and (4) even if *Miranda* was violated, the physical evidence should not be suppressed because it would have been inevitably discovered even without the violation. Because we can resolve this case on the basis of the first issue, there is no occasion to address the other three.

The threshold issue is whether Woods was subjected to a custodial interrogation. In the absence of a custodial interrogation, the requirement to recite the *Miranda* warnings is not triggered and the analysis is at an end. *See, e.g.*, *Miranda*, 384 U.S. at 444; *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). The government concedes that Woods was in custody at the time Officer Mardigian asked him "What is in your pocket?". So the only remaining issue is whether that question amounted to an "interrogation" within the meaning of *Miranda* jurisprudence.

The Supreme Court has held that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). We conclude that Officer Mardigian's question in the present case does not meet this definition because it was an inquiry "normally attendant to arrest and custody."

The question "What is in your pocket?" was not an investigatory question or otherwise calculated to elicit an incriminating response, but rather a natural and automatic response to the unfolding events during the normal course of an arrest. Officer Mardigian was lawfully patting down Woods and, while doing so, came across a hard object in Woods's pocket that he could not identify. He then asked Woods what

the object was. To ask "What's that?" or "What is in your pocket?" in such a situation is essentially an automatic, reflexive question directed at ascertaining the identity of an object that is legitimately within the officer's power to examine as part of a search incident to an arrest, and as such is "normally attendant" to an arrest. It had nothing to do with an interrogation as that term is commonly understood.

The answer to Officer Mardigian's question could have been either innocuous or incriminating. If the answer were innocuous ("It's my keys."), then the probable effect of the question would have been to spare both Officer Mardigian and Woods the trouble of a physical search to verify the object's identity ("Oh, okay, that's what it feels like, so I'll ask you to remove the keys from your pocket."). And that is the likely response in the run of cases, which means that prohibiting the question would create an incentive for a more intrusive physical search. If, on the other hand, the response had revealed that the object was contraband, it would have revealed nothing more than what Officer Mardigian would have found anyway as a result of his undisputed right to search Woods incident to the arrest. To say that Officer Mardigian had the right to physically go through Woods's pockets but could not simply ask him "What is in your pocket?" would be illogical.

To be sure, there will be the unusual case, like this one, where the police ask "What is in your pocket?" and the suspect responds by divulging incriminating information that has nothing to do with the question asked. But such a response is not "reasonably likely." Woods was asked a simple, nontrick question about what turned out to be keys in his pocket. That he would respond by volunteering that he had a weapon in his car is no more reasonably likely than that he would reveal that he was a drug dealer or a convicted felon. The unexpected and unresponsive reply cannot retroactively turn a non-interrogation inquiry into an interrogation. *See Innis*, 446 U.S. at 301-02 ("[T]he police surely cannot be held accountable for the unforeseeable results of their words or actions . . . ."); *Miranda*, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected

by our holding today."); *see also Tolliver v. Sheets*, 594 F.3d 900, 917-18 (6th Cir. 2010) (holding that express questioning following up on volunteered information was not an interrogation even though the response turned out to be incriminating); *United States v. Lawrence*, 952 F.2d 1034, 1036 (8th Cir. 1992) (holding that where the police officer "did not even mention a gun" and "merely asked a few routine identification questions necessary for booking purposes," but the arrestee "volunteered . . . that he had thrown away a gun while fleeing," the "statement about the gun did not come in response to interrogation" and was therefore admissible).

The fact that Officer Mardigian's question was not reasonably likely to elicit an incriminating response beyond what he was already entitled to know (i.e., what was the object in Woods's pocket) is also important because it clarifies that the question was not intended to obtain incriminating information. Under *Innis*, the officer's intent is not dispositive in determining whether certain conduct amounts to custodial interrogation. *See* 446 U.S. at 301. But "[t]his is not to say that the intent of the police is irrelevant, for it may well have a bearing on whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response." *Id.* at 301 n.7. Indeed, the Supreme Court has found that certain conduct did not amount to interrogation partly on the basis that it was not designed or intended to elicit incriminating information. *See id.* at 303 n.9 (noting that "[t]he record in no way suggests that the officers' remarks were *designed* to elicit a response" (emphasis in original) and finding that "[i]t is significant that the trial judge, after hearing the officers' testimony, concluded that [the officers' remark] was 'entirely understandable.'"); *Arizona v. Mauro*, 481 U.S. 520, 528 (1987) (holding that the police department's allowing the suspect to speak to his wife in the presence of a police officer with a tape recorder did not amount to an interrogation, in part because "[t]here is no evidence that the officers sent Mrs. Mauro in to see her husband for the purpose of eliciting incriminating statements"). In the present case, the fact that the question "What is in your pocket?" was not intended to elicit incriminating information strengthens the

inference that the question was normally attendant to Woods's arrest and therefore did not constitute custodial interrogation.

We believe that our analysis is also consistent with common sense. If we were to hold that the question "What is in your pocket?" amounted to an interrogation such as to require *Miranda* warnings, we would be saying, in effect, that the police were acting lawfully when they drew a gun on Woods, dragged him out of his car by the wrists, ordered him to the ground, cuffed his hands behind his back, and patted him down; but the moment that they asked "What is in your pocket?", they went beyond the bounds of constitutionally permissible action. The Fifth Amendment does not require such an impractical regime of stilted logic.

Woods, however, resists the conclusion that Officer Mardigian's question did not amount to an interrogation, insisting that the Supreme Court's definition of interrogation is any "questioning initiated by law enforcement officers." *Miranda*, 384 U.S. at 444. According to Woods's Brief,

> [t]he recognized exception [to the definition of interrogation] for statements or conduct that are "normally attendant to arrest and custody" [quoting *Innis*, 446 U.S. at 301] applies not to express questioning as occurred here, but only to the expanded category of the 'functional equivalent of express questioning.' . . . We have found no case, and the government cites none, in which that language is used to exempt express questions.

To the contrary, we have found several post-*Innis* Supreme Court decisions holding that, under the circumstances, law enforcement's express questioning of a person in custody did not amount to an interrogation. One such case is *South Dakota v. Neville*, 459 U.S. 553 (1983), where the Supreme Court held:

> In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*. As we stated in *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980), police words or actions

"normally attendant to arrest and custody" do not constitute interrogation.

*Id.* at 564 n.15.

Likewise, in *Illinois v. Perkins*, 496 U.S. 292 (1990), the Court held that an undercover police officer's questioning of a prison inmate did not constitute an interrogation:

> The state court here mistakenly assumed that because the suspect was in custody, no undercover questioning could take place. When the suspect has no reason to think that the listeners have official power over him, it should not be assumed that his words are motivated by the reaction he expects from his listeners. When the agent carries neither badge nor gun and wears not police blue, but the same prison gray as the suspect, there is no *interplay* between police interrogation and police custody.

*Id.* at 297 (emphasis in original) (brackets and internal quotation marks omitted).

Finally, in *Pennsylvania v. Muniz*, 496 U.S. 582 (1990), the Court held that the defendant's incriminating statements in response to the police officer's question as to whether the defendant understood the instructions for certain sobriety tests was not the product of custodial interrogation:

> The dialogue also contained limited and carefully worded inquiries as to whether Muniz understood those instructions, but these focused inquiries were necessarily "attendant to" [quoting *Innis*, 446 U.S. at 301] the police procedure held by the court to be legitimate. Hence, Muniz's incriminating utterances during this phase of the videotaped proceedings were "voluntary" in the sense that they were not elicited in response to custodial interrogation.

*Id.* at 603-04. The *Muniz* Court also concluded that the defendant's responses to the officer's question as to whether he understood the nature of a breathalyzer test and its legal consequences, and whether he was willing to submit to the test, "were not prompted by an interrogation within the meaning of *Miranda*." *Id.* at 604-05.

In each of the above cases, the Supreme Court held that the express questioning of a suspect in custody did not amount to an interrogation. And in *Neville* and *Muniz*, the Court specifically relied on *Innis*'s definitional exclusion of conduct "normally attendant to arrest and custody." Woods's argument that *any* express questioning of a suspect in custody amounts to an interrogation, and that the "normally attendant" exclusion does not apply to express questions, is therefore conclusively refuted by the Court's caselaw.

Nor is there any reason to believe that the exclusion of certain express questions from the definition of interrogation is limited to the particular factual circumstances of *Neville*, *Perkins*, and *Muniz*. Suppose, for example, that an officer sees that the handcuffed suspect is grimacing in pain and asks "Are you okay?", to which the suspect responds "I killed her." Such a response—which, just like the response in the present case, would be an unexpected and unresponsive answer to the question posed—would not be the product of custodial interrogation and would therefore be admissible. *Cf. Harryman v. Estelle*, 616 F.2d 870, 879 (5th Cir. 1980) (en banc) (Hill, J., concurring) ("Thus, if an officer responds to a loud noise by saying 'What's that?', I suggest that an answer such as 'I dropped my pistol' would be admissible in a prosecution for unlawful possession of a firearm."); *id.* at 880 (Reavley, J., concurring) (suggesting that questions such as "Can you hear me?", "What is the matter?", or "Where are your glasses?" do not amount to custodial interrogation).

Indeed, Woods's fixation on whether Officer Mardigian's statement was an express question is misdirected because it elevates form over substance in precisely the way that the Supreme Court cautioned against in *Innis*. In holding that a custodial interrogation may result from statements or conduct other than express questioning, the Court reasoned that "[t]o limit the ambit of *Miranda* to express questioning would place a premium on the ingenuity of the police to devise methods of indirect interrogation, rather than to implement the plain mandate of *Miranda*." *Innis*, 446 U.S. at 299 n.3. So the test is not whether the alleged interrogation is phrased in the form of a question or

a declarative sentence, but whether the conduct implicates the concerns with police "compulsion" and "coercion" that animated the *Miranda* decision. *Id.* at 299-301. The proper implementation of *Innis*, *Mauro*, *Neville*, *Perkins*, and *Muniz* thus requires us to determine whether the words or actions on the part of the police are those normally attendant to arrest and custody, and whether they give rise to the concerns about police coercion that animated the *Miranda* decision. It does not require us to attach talismanic importance to whether the words are punctuated by a question mark.

In short, we hold that, under the circumstances of the present case, the question "What is in your pocket?" did not amount to a custodial interrogation. Officer Mardigian was therefore not required to recite the *Miranda* warnings prior to posing that question. And because we hold that Officer Mardigian's initial question did not constitute a custodial interrogation and that Woods's response that he was "bogue" was admissible, we need not decide whether the officer's subsequent questions—as to whether the contraband was drugs or a gun and whether it was on Woods's person or in his car—constituted a custodial interrogation. Those subsequent questions do not affect the outcome of this case because, following Woods's volunteered statement that he was in possession of contraband, the car would have inevitably been searched and the evidence would have come to light even in the absence of any further questioning. *See, e.g.*, *United States v. Alexander*, 540 F.3d 494, 504 (6th Cir. 2008) (holding that the evidence in question was admissible despite the failure to provide *Miranda* warnings because it would have been inevitably discovered even in the absence of the defendant's confession).

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

————————————

**CONCURRENCE**

————————————

CLAY, Circuit Judge, concurring. The majority rejects Defendant's *Miranda* argument because it finds that the question asked by the police officer, "What is in your pocket?" constituted a proper inquiry incident to an arrest, and did not constitute custodial interrogation for *Miranda* purposes. Although I agree with the majority's reasoning, I believe that the court below could have upheld the lawfulness of the search based upon either the majority's rationale, or because the officer's inquiry was appropriate based upon the need to insure the officer's safety.

"[W]hen officers ask questions 'necessary to secure their own safety or the safety of the public' as opposed to 'questions designed solely to elicit testimonial evidence from a suspect,' they do not need to provide the warnings required by *Miranda*." *United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007) (quoting *New York v. Quarles*, 467 U.S. 649, 659 (1984)). This Court and seven of our sister circuits have already found that similar questions, in anticipation of a pat down, are permissible under the public-safety exception where the officer has a reasonable belief that there may be a weapon on the defendant's person. *See  United States v. Reyes*, 353 F.3d 148, 152–53 (2d Cir. 2003) (collecting cases); *see also, e.g.*, *United States v. Mohammed*, No. 10-4145, 2012 WL 4465626, at *12 (6th Cir. Sept. 28, 2012) (unpublished) (applying exception where the handcuffed defendant was asked whether he had any weapons, drugs, or sharp objects on him); *United States v. Lackey*, 334 F.3d 1224, 1227–28 (10th Cir. 2003) (applying exception where the handcuffed defendant was asked, "Do you have any guns or sharp objects on you?"). Similarly, the officer's question in this case was proper because the question is excepted from *Miranda*'s requirements due to public safety concerns. *See Quarles*, 467 U.S. at 659.

Both the non-coercive nature of the question asked, incident to the arrest, and the need for officer safety, support the conclusion that suppression based on *Miranda* was not warranted in this case.