RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0310p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 19-6089

CRAIG B. SNODDY,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 4:18-cr-00009-1—Travis R. McDonough, District Judge.

Decided and Filed: September 24, 2020

Before: BATCHELDER, MOORE, and ROGERS, Circuit Judges.

───────────────

#### COUNSEL

───────────────

**ON BRIEF:** Dennis J. Clark, CLARK LAW FIRM PLLC, Detroit, Michigan, for Appellant.
Jay Woods, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee.

───────────────

#### OPINION

───────────────

KAREN NELSON MOORE, Circuit Judge. On appeal from his drug-trafficking convictions, Craig Snoddy challenges the district court's denial of his motion to suppress the evidence resulting from an inventory search of his car. Past midnight on a dark highway, Tennessee Highway Patrol Officer Adam Malone stopped Snoddy for speeding and arrested him on outstanding warrants, including for drug crimes. As Snoddy was the sole occupant of the car, Trooper Malone called for a tow truck to have Snoddy's car impounded. Trooper Malone was

required by state policy to conduct an inventory search of Snoddy's car prior to towing.  Snoddy claims that the inventory search in reality was a pretext for an investigative search for drugs, in violation of the Fourth Amendment.  Because the district court did not clearly err in finding no such pretext, we **AFFIRM** the district court's denial of Snoddy's motion to suppress.

## I. BACKGROUND

Around 1:00 a.m. on November 9, 2017, Trooper Malone stopped Snoddy for speeding on the highway.  R. 75 (Suppression Hr'g Tr. at 5–7) (Page ID #478–80).  During the stop, Trooper Malone learned that there were State of Georgia warrants out for Snoddy's arrest, including for drug crimes, so Trooper Malone and a back-up officer arrested Snoddy on the Georgia warrants.  *Id.* at 8–9 (Page ID #481–82).  Trooper Malone also suspected that Snoddy might have drugs in the car.  Def.'s Ex. 2 (Video Part 1).  Within a minute after making the arrest, the officers asked twice for consent to search the car, but Snoddy refused.  *See id.*  Then Trooper Malone told Snoddy, "I'm gonna have to get the car towed, 'cause it's not just gonna sit here, and we have to do an inventory on the car."  *Id.*; R. 75 (Suppression Hr'g Tr. at 34, 44) (Page ID #507, 517).

For about twelve minutes, Trooper Malone again repeatedly asked Snoddy for consent to search the car—warning Snoddy that if he did not agree to a search then the car would be inventoried, meaning that Trooper Malone would have to search the car and list out the items that he found.  *See* R. 75 (Suppression Hr'g Tr. at 30) (Page ID #503); Def.'s Ex. 2 (Video Part 1).  Snoddy repeatedly denied consent.  Roughly eight minutes after the arrest, in the midst of the attempts to obtain Snoddy's consent, Trooper Malone called in the tow truck, but continued to seek consent from Snoddy to search the car.  *See* R. 75 (Suppression Hr'g Tr. at 34) (Page ID #507); Def.'s Ex. 2 (Video Part 1).  About five minutes after Trooper Malone called in the tow truck, Trooper Malone began conducting an inventory of the car.  *See* R. 75 (Suppression Hr'g Tr. at 45) (Page ID #518); Def.'s Ex. 2 (Video Part 1).  During the inventory, Trooper Malone discovered and seized approximately one pound of methamphetamine, two handguns, and a set of scales.  *See* R. 75 (Suppression Hr'g Tr. at 16) (Page ID #489); R. 49 (Plea Agreement at 3) (Page ID #159).

Snoddy was indicted for possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B), possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i), and possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). R. 1 (Indictment) (Page ID #1). Snoddy moved to suppress the drugs and guns seized from the car, arguing that Trooper Malone's decision to impound the car was unreasonable and that the decision to inventory the car was a pretext for an investigative search. R. 19 (Mot. to Suppress) (Page ID #39). The magistrate judge conducted an evidentiary hearing during which a video of part of the encounter was played in court, and Trooper Malone testified. *See* R. 75 (Suppression Hr'g Tr.) (Page ID #474). Following the hearing, the magistrate judge issued a Report and Recommendation ("R & R") recommending that the district court deny Snoddy's motion to suppress because "Trooper Malone's subjective beliefs do 'not invalidate an otherwise proper inventory search.'" R. 33 (R & R at 6) (Page ID #116) (quoting *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007)).

After considering Snoddy's objections, the district court adopted the R & R and denied the motion to suppress. R. 44 (Mem. & Op.) (Page ID #143). The parties then negotiated a plea agreement that resulted in Snoddy's pleading guilty to possessing methamphetamine with intent to distribute and possessing a firearm in furtherance of drug trafficking, in exchange for the government's dropping of the felon-in-possession charge. *See* R. 49 (Plea Agreement at 1–2) (Page ID #157–58). Snoddy was convicted and sentenced per the plea agreement to 212 months' imprisonment. R. 70 (Judgment at 2) (Page ID #441); R. 49 (Plea Agreement at 4) (Page ID #160). In the plea agreement, Snoddy expressly reserved his right to appeal the denial of his motion to suppress. R. 49 (Plea Agreement at 2) (Page ID #158).

On appeal, Snoddy concedes that the traffic stop was lawful, that his arrest was valid, that it was within Trooper Malone's discretion to impound the car, and that an inventory was required once Trooper Malone decided to tow the car. Further, Snoddy does not take issue with the scope or invasiveness of the search. Instead, Snoddy argues that the decision to impound and inventory the car was a pretext for a warrantless investigative search in violation of the Fourth Amendment. We have jurisdiction over Snoddy's timely appeal.

## II. ANALYSIS

"When considering the denial of a motion to suppress evidence, 'we review the district court's factual findings under the clear-error standard and its legal conclusions de novo.'" *United States v. Hockenberry*, 730 F.3d 645, 657 (6th Cir. 2013) (quoting *United States v. Woods*, 711 F.3d 737, 740 (6th Cir. 2013)). In doing so, we "consider the evidence in the light most favorable to the government." *United States v. Woods*, 711 F.3d 737, 740 (6th Cir. 2013). "A finding is clearly erroneous only if the record as a whole leaves the reviewing court with the definite and firm conviction that a mistake has been committed." *Kerman v. Commissioner*, 713 F.3d 849, 867 (6th Cir. 2013) (internal quotation omitted).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects," including vehicles, "against unreasonable searches and seizures." U.S. CONST. amend. IV; *United States v. Jones*, 565 U.S. 400, 404 (2012). The general rule is that warrantless searches of vehicles "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (internal quotation omitted). "[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 811 n.1 (1996). A vehicle is lawfully seized and, thus, subject to an inventory search if it is lawfully impounded. *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012).

Officers exercising their discretion to impound a vehicle must do so "according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* at 454 (quoting *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001)). Similarly, "[i]n order to be deemed valid, an inventory search may not be undertaken 'for purposes of investigation,' and it must be conducted 'according to standard police procedures.'" *Smith*, 510 F.3d at 651 (quoting *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998)); *see also United States v. Alexander*, 954 F.3d 910, 916 (6th Cir. 2020) (stating that the inventory exception applies only when officers follow "'standardized criteria' or 'established routine'

governing the scope of the inventory searches'" (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990))). The search is unconstitutional if "the evidence establishes that the 'police acted in bad faith or for the sole purpose of investigation' in conducting an inventory search." *Hockenberry*, 730 F.3d at 659 (quoting *United States v. Vite-Espinoza*, 342 F.3d 462, 470 (6th Cir. 2003)). In other words, officers cannot hide an investigative search under the pretext of an inventory search. *See id.*; *South Dakota v. Opperman*, 428 U.S. 364, 375–76 (1976). That said, "the mere fact that an officer suspects that contraband may be found in a vehicle does not invalidate an otherwise proper inventory search." *Smith*, 510 F.3d at 651.

Here, Trooper Malone decided to have Snoddy's car towed and impounded after arresting Snoddy, the sole occupant of the car, on outstanding warrants. Impounding the car, Snoddy concedes, was within Trooper Malone's discretion, and conducting an inventory was required as a matter of Tennessee Department of Safety policy. General Order 513 of the Tennessee Department of Safety provides:

> Members shall, upon custodial arrest, conduct an inventory of the arrested person's vehicle before towing.
>
> A.  An inventory is an administrative care-taking procedure conducted when a vehicle is towed in order to protect the member and property left in the vehicle.
>
> B.  An inventory will be made of the contents and listed in the "Vehicle Inventory" section of the Tow-In/No Tow Report (SF-0156) as to ensure the safe custody of the owner/operator's property.
>
>     1.  Additional sheets used for inventory must be initialed and dated.
>
> C.  The inventory is necessary as a means of protecting the owner/operator's property, the member from potential danger, the department, and the temporary storage operator against claims of lost or stolen property.
>
> D.  The vehicle inventory will include the entire vehicle including, the passenger compartment, trunk, or any area that may contain property, including closed containers, compartments, luggage, etc.
>
> E.  Any/all containers, suitcases, or attaché cases encountered during an inventory which do not allow members to externally view the contents contained therein shall be opened and the contents listed. This shall apply to locked as well as unlocked property. (Florida vs. Wells) (1990) 110.S. Ct. 1632. Due care should be taken by members so as not to intentionally damage locked containers, suitcases, or attaché cases. If a locked container

cannot be opened without damage, the member shall record it as a "locked container, contents unknown" on the inventory.

F.    The member must be able to determine what items are in the vehicle and what items are in police custody for safekeeping. (South Dakota vs. Opperman) (1976) 428 U.S. 364, 369.

G.    Contraband discovered during the course of inventory will be listed on the Arrest/Criminal Interdiction Report (SF-1232) and charges will be placed against the appropriate party/parties. (Colorado vs. Berti[n]e) (1987) 107.

H.    Members shall inventory all vehicle(s) towed by the member to protect themselves from liability.

I.    Inventories are not required when a vehicle is not removed from the possession of the owner/operator.

R. 80-1 (Tenn. Dep't of Safety General Order 513 at 2–3) (Page ID #583–84). Thus, under the policy, once an officer has exercised her discretion to impound the vehicle, the officer *must* conduct an inventory before towing. *Id.* at 2 (Page ID #583).

Acknowledging that this is the policy, Snoddy argues that the inventory search nevertheless was pretextual because Trooper Malone's subjective intent was to conduct an investigative search.[1] In Snoddy's view, searching for contraband was not simply *a* motive for searching the vehicle—but was the principal, or true, motive.

Snoddy points to several statements made by Trooper Malone as evidence of his subjective intent to investigate. After dispatch told Trooper Malone about Snoddy's warrants, Trooper Malone told dispatch that he "c[ould] tell something was up" and that he was going to "try to search" the car once backup arrived. R. 75 (Suppression Hr'g Tr. at 29–30) (Page ID #502–03); Def.'s Ex. 2 (Video Part 1). Then, over twelve minutes, Trooper Malone repeatedly asked for Snoddy's consent to search the car, to no avail. He told Snoddy that he knew that there were drugs in the car and that he would find them anyway in an inventory search—saying things

---

[1]Snoddy additionally argues that Trooper Malone, rather than impounding the car, should have contacted Snoddy's girlfriend, who owned the car and lived less than an hour away, to see if she could pick it up. There is no evidence in the record that Snoddy asked Trooper Malone to do so, *see* R. 33 (R & R at 3) (Page ID #113), and regardless, as Snoddy concedes, it was within Trooper Malone's discretion to have the car impounded even if Snoddy's girlfriend could have picked it up. *See Kimes*, 246 F.3d at 805 (holding that the officers were entitled to exercise their discretion to impound the vehicle even though they could have asked the defendant's wife to come pick it up).

like, "Don't let me tear apart this car. Just tell me where it's at," and guessing aloud that it was meth. Def.'s Ex. 2 (Video Part 1); R. 75 (Suppression Hr'g Tr. at 34) (Page ID #507). Once Trooper Malone found the drugs, he said, "I told you I was going to find it either way." Def.'s Ex. 2 (Video Part 1). Snoddy also points out that Trooper Malone did not call in the tow truck until after seeking consent from Snoddy to search the car. *See* R. 75 (Suppression Hr'g Tr. at 34) (Page ID #507); Def.'s Ex. 2 (Video Part 1).**2**

The problem for Snoddy is that, regardless of Trooper Malone's motivations and beliefs, Trooper Malone was going to have the car towed no matter what. Snoddy was the sole occupant of the car, and the car would have been left out on the side of the highway near an intersection in the middle of the night where it could be stolen, vandalized, or hit by another vehicle. "The Fourth Amendment permits impoundment decisions and inventory searches that are objectively justifiable . . . regardless of an officer's subjective intent." *Kimes*, 246 F.3d at 805 (citing *Whren*, 517 U.S. at 812). In these circumstances—where the arrestee is the sole occupant of the car and the car would be left on the side of the road in the middle of the night—impounding the car reasonably could be seen as objectively justifiable.

We came to a similar conclusion in *Hockenberry*, where we held that the district court did not clearly err in finding that the inventory search was not pretextual even though the officers had questioned the defendant about whether contraband was in the vehicle and even though the officers did not mark down in the inventory every item that they pulled from the car. *See* 730 F.3d at 660–61. Though we acknowledge that "some of the evidence calls into question whether the inventory search was pretextual," as in *Hockenberry*, we are not left with the definite and firm conviction that the district court erred in finding that the inventory search was objectively justifiable. *See id.* Because the district court did not clearly err in finding that the inventory search was not pretextual, we uphold its denial of Snoddy's motion to suppress.

---

**2**Snoddy also claims that the inventory was pretextual because Trooper Malone took possession of only the drugs, guns, and scales that he found in the car, and not any of the other items such as clothes. But there is no reason why Trooper Malone should have taken possession of non-contraband items personally, and Trooper Malone listed the non-contraband items in the inventory sheet, as required by the policy. *See* R. 80-2 (Inventory Sheet) (Page ID #589).

## III.  CONCLUSION

We **AFFIRM** the judgment of the district court.