NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0468n.06

Case No. 22-1201

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Nov 18, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| MARQUEZ MAURICE GOINS, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |
| | ) | |

Before: SUTTON, Chief Judge; COLE and THAPAR, Circuit Judges.

COLE, Circuit Judge. Marquez Goins was arrested after an incident of alleged domestic violence and was subsequently indicted for being a felon in possession of a firearm. Goins moved to suppress evidence that police obtained after they entered a residence without a warrant. The district court denied the motion, and Goins pleaded guilty to the charge in the indictment. Goins now appeals, arguing that the district court erred in denying his suppression motion. Because the district court did not clearly err in determining that exigent circumstances justified the warrantless entry and therefore the evidence was obtained lawfully, we AFFIRM the denial of Goins's suppression motion.

## I. BACKGROUND

On July 19, 2020, at approximately 3:30 a.m., Florence Osborne called 911. Osborne told the operator that her daughter's boyfriend was "fighting her" and that he "got a gun" at 838 Calumet Street in Detroit, Michigan. (Govt. Ex. 1, 911 Call, R. 25 (audio recording).)

When asked what the boyfriend was doing with the gun, Osborne reported that she was unsure, having just received "a call" relaying the information to her. (*Id.*) Shortly thereafter, the Detroit Police dispatcher relayed the information to Officers Muhamed Vilic and Larry Jenkins and directed them to respond.

At the scene, Osborne greeted Vilic and Jenkins with a key to the apartment, identified herself as the 911 caller and mother of the victim, and reiterated the same information conveyed on the 911 call. Vilic and Jenkins heard no yelling or other sounds of a struggle coming from the apartment, nor did they interview any neighbors to ask if they had seen or heard any signs of violence at the apartment. Vilic, however, peered through the blinds of the apartment window and spotted two people, later confirmed to be Marquez Goins and Erica Arnold, seated on the couch. Vilic saw Arnold's face and believed that she looked "very uncomfortable," like "she did not want to be there;" she sat upright and tense, leaning to the side as if trying to "create space" between herself and Goins. (Mot. to Suppress Hr'g Tr., R. 60, PageID 396–97.) Vilic also observed what he believed to be signs of a struggle, including eating utensils on the floor and other items that seemed "knocked down, out of place." (*Id.* at 397.)

Based on the information relayed to them by the police dispatcher and Osborne, as well as their observations on the scene, Vilic and Jenkins decided to enter the apartment to separate the couple and investigate further. Vilic and Jenkins knocked on the apartment door, which was unlocked and, according to Vilic, a female voice gave them permission to enter. Goins disputes the veracity of this statement. In any event, Vilic and Jenkins entered the apartment and told Goins and Arnold to show them their hands; Arnold did so, but Goins kept his hands "wrapped around" Arnold. (*Id.* at 398.) Vilic and Jenkins repeated the commands, and Goins again declined to

comply. Based on their continued concern for Arnold's safety, Vilic and Jenkins then decided to physically separate the couple.

After extricating Arnold from Goins's grip, Vilic and Jenkins asked if there were any weapons in the apartment. Arnold informed them of a weapon that belonged to her, which Vilic and Jenkins verified. Both Arnold and Goins denied there being any other weapons in the apartment, but Vilic noticed the handle of a gun sticking out of Goins's right pants pocket. Vilic began to retrieve the weapon from Goins's pocket, and a struggle ensued. Vilic and Jenkins eventually secured the gun and arrested Goins, who admitted that he was not supposed to own a gun but had it for protection nonetheless. After police removed Goins from the apartment, Arnold reported that she and Goins had a disagreement at a nightclub earlier that evening. Against Arnold's wishes, Goins followed her home and, once at her apartment, slapped and bit her. Consistent with Arnold's story, Vilic saw bruising and small lacerations on Arnold's face and bite marks near her right ear.

Several months later, a grand jury indicted Goins with being a felon in possession of a weapon in violation of 18 U.S.C. § 922(g)(1). Goins moved to suppress evidence of the gun and his statements to police, arguing that police obtained both unlawfully based on the Fourth Amendment's prohibition on warrantless searches and seizures. The government acknowledged that Vilic and Jenkins entered the apartment without a warrant but presented several arguments to justify the entry. After an evidentiary hearing, the government abandoned several of the arguments made in its brief and relied solely on the Fourth Amendment's exigent circumstances exception. The district court concluded that exigent circumstances indeed justified the warrantless entry into the apartment, and thus declined to suppress the gun or evidence of Goins's statements to police.

Goins pleaded guilty to the charge in the indictment, and now appeals, specifically challenging the district court's denial of his motion to suppress. Because the district court did not err in finding that exigent circumstances justified Vilic and Jenkins's warrantless entry, we affirm.

## II. ANALYSIS

In reviewing a denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Snoddy*, 976 F.3d 630, 633 (6th Cir. 2020) (quoting *United States v. Hockenberry*, 730 F.3d 645, 657 (6th Cir. 2013)). We consider the evidence in the light most favorable to the prosecution. *United States v. Woods*, 711 F.3d 737, 740 (6th Cir. 2013). The district court's factual findings will only be deemed clearly erroneous if, upon review, we are left with "a definite and firm conviction" that the district court made a mistake. *United States v. Huffman*, 461 F.3d 777, 782 (6th Cir. 2006) (quoting *United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999) (internal quotation marks omitted)).

The Fourth Amendment wards against unreasonable searches and seizures inside a home, and searches and seizures conducted without a warrant are presumed unreasonable. *Michigan v. Fisher*, 558 U.S. 45, 47 (2009). But exceptions to the prohibition on warrantless entry exist, including—as relevant here—the "exigent circumstances doctrine." *United States v. Purcell*, 526 F.3d 953, 960 (6th Cir. 2008). The government can thus overcome the presumption of unreasonableness by proving that exigent circumstances justified the warrantless entry. *Schreiber v. Moe*, 596 F.3d 323, 329–30 (6th Cir. 2010) (quoting *Fisher*, 558 U.S. at 47.) Exigent circumstances arise where taking the time to procure a warrant would cause "immediate and serious consequences." *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002)). Relevant here, an officer's reasonable belief, based on the totality of the circumstances, that he needed to enter a residence to

protect someone from harm warrants a finding of exigency. *Baker v. City of Trenton*, 936 F.3d 523, 531 (6th Cir. 2019) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006)).

Here, the district court did not err in determining that reasonable officers would have believed that an exigency justifying an immediate, warrantless entry existed. Although none of these circumstances individually justify a warrantless entry, taken together, the 911 call, Osborne's statement on the scene, and Vilic's observations of Arnold and the state of the apartment indicated that Vilic and Jenkins needed to respond swiftly to prevent Goins from harming Arnold.

First, 911 calls—while not determinative—are "highly relevant" to the issue of exigency. *Smith v. City of Wyoming*, 821 F.3d 697, 712 (6th Cir. 2016). Osborne also took an extra step to corroborate the information she provided on the 911 call by appearing in person and informing the officers about the alleged violence and potential firearm. *See Huffman*, 461 F.3d at 785 (on-scene corroboration of 911 call supported finding of exigent circumstances). And the contents of the 911 call and Osborne's statement at the scene were particularly concerning. The mere existence of firearms within a residence does not create an exigency, but indicia that such weapons might be used can support a finding of exigent circumstances. *See Gradisher v. City of Akron*, 794 F.3d 574, 584–85 (6th Cir. 2015). Such was the case here where Osborne stated that Goins was "fighting" Arnold and had a gun on him. (Govt. Ex. 1, 911 Call, R. 25 (audio recording).)

Furthermore, Vilic's observations of signs of a struggle and Arnold's apparent discomfort also suggest that the police reasonably believed they needed to intervene immediately. Goins correctly observes that, by itself, Vilic's observation of a few displaced eating utensils does not justify a finding of exigency. But Goins ignores the other facts—such as Osborne's statement that Goins had already been violent toward Arnold—and Supreme Court precedent, which makes clear that "[o]fficers do not need ironclad proof of 'a likely serious, life-threatening' injury" to justify a

warrantless entry based on exigent circumstances. *Fisher*, 558 U.S. at 49. An exigent circumstances analysis requires consideration of the totality of the circumstances and, in light of all of the evidence Vilic and Jenkins had when they decided to enter the residence, they had an objective basis to believe that immediate entry was justified. *See United States v. Brown*, 449 F.3d 741, 748 (6th Cir. 2006).

Goins argues that the 911 call, particularly Osborne's statement about Goins having a firearm, should be discounted because she stated that the information came from "a call" she received, and she failed to name the caller. (Govt. Ex. 1, 911 Call, R. 25 (audio recording).) Goins contends that Osborne's failure to name her source makes her statement to the 911 operator essentially an anonymous tip and is therefore insufficient to justify a warrantless entry. Goins is correct that, in a probable cause analysis, an anonymous tip is of little probative value. *See United States v. Helton*, 35 F.4th 511, 519 (6th Cir. 2022). But Vilic and Jenkins could rely on other information aside from the statements in the 911 call, including Osborne's statements at the scene and their own observations, such as the alleged look of discomfort on Arnold's face and the fact that Goins's arms were wrapped around her with his hands out of sight.

Finally, contrary to Goins's argument, a finding of exigent circumstances based on the facts of this case does not stray beyond the bounds of the exception as articulated in our case law or Supreme Court precedent. The Supreme Court has observed that police have the authority "to enter a dwelling to protect a resident from domestic violence" if they have a "good reason to believe" that the alleged victim remains at risk of harm. *Georgia v. Randolph*, 547 U.S. 103, 118 (2006). Nor do officers need to witness violence firsthand to ascertain that an individual may pose a threat of harm to others or to themselves. *See Fisher*, 558 U.S. at 49. As already described, Vilic

and Jenkins had multiple reasons to believe that waiting to obtain a warrant would endanger Arnold.

Other recent Sixth Circuit cases applying the exigent circumstances exception in domestic violence situations echo our conclusions here. For example, in *Baker v. City of Trenton*, we determined that the exigent circumstances exception applied where, relying on a witness statement, the police dispatcher informed the officers that a young man was "threatening and yelling at his mother" and was possibly armed. 936 F.3d at 528, 533. Police did not interview neighbors or obtain any other evidence at the scene, other than hearing the suspect yell at them, demanding they leave. *Id.* at 528. We agreed with the district court that those facts justified the police's warrantless entry, even where there were no signs of ongoing domestic violence. *Id.* at 532.

In *Schreiber v. Moe*, we likewise concluded that exigent circumstances justified a warrantless entry into a home where a 911 caller "claimed to have heard screaming and believed that [a teenage girl] was being beaten by her parents." 596 F.3d at 330. The police officer testified that, upon arriving at the scene, he heard yelling from within the home, but could not confirm whether or not he saw the alleged victim or her injuries before he entered. *Id.* at 330–31. Nevertheless, we explained that the officer's entry was justified under either scenario, as the uncertainty of the alleged victim's safety made it "reasonable for him to investigate so that he could confirm [the victim] was okay." *Id.*

Conversely, in domestic violence cases where we found the exigent circumstances exception inapplicable, the alleged victim had been removed from the potentially dangerous situation already. For example, in *United States v. Tatman*, no exigency existed where the couple had been separated and, while there was evidence of a firearm in the home, there was no indication that it was likely to be used. 397 F. App'x 152, 163–64 (6th Cir. 2010). By contrast, when Vilic

and Jenkins arrived on the scene, Goins and Arnold were sitting close together on the couch, with Arnold's countenance and body language conveying discomfort. Likewise, the officers had no indication that the weapon was no longer in play, particularly where, according to Vilic, he could not see Goins's hands.

Overall, under the circumstances that existed when Vilic and Jenkins arrived on the scene, reasonable officers would have had an objective basis for believing that they needed to enter the premises immediately for Arnold's safety.

## III. CONCLUSION

For the foregoing reasons, we affirm the denial of Goins's suppression motion.