NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0263n.06

No. 22-1587

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| RODDRICK MONTEZ WILSON, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

**FILED**
Jun 08, 2023
DEBORAH S. HUNT, Clerk

Before: SUTTON, Chief Judge; BATCHELDER and STRANCH, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Defendant-appellant Roddrick Wilson was charged with possession with intent to distribute 500 grams or more of methamphetamine and with possession of a firearm in furtherance of a drug trafficking crime. He conditionally pleaded guilty, reserving the right to appeal the district court's denial of his motion to suppress evidence based on alleged Fourth Amendment violations. Because his Fourth Amendment rights were not violated, we affirm.

**I.**

Around midnight on June 6, 2021, Grand Rapids Police Officer Ryan Manser was patrolling a residential area in a marked police vehicle. When he approached an intersection, Manser heard a car door slam to his right and turned to observe a man (later revealed to be Wilson) in blue jeans and a t-shirt walking away from a black sedan. Wilson repeatedly looked over his shoulder at Manser's vehicle and walked with his left hand swinging freely and right hand pinned

to his side. Manser then turned right at the intersection and activated the spotlight on his vehicle to better observe Wilson. As soon as he did so, Wilson bolted, running down the block and through residential foliage to evade Manser, who then noticed a dark object in Willson's right hand and suspected it was a firearm.

Manser pursued and, with the assistance of other officers, located Wilson hiding on the front porch of a house in the neighborhood. The officers took Wilson into custody, searched him, and found an iPhone and a car key fob in his pockets. Manser then proceeded, with the assistance of a canine tracking Wilson's scent, to search the area where Wilson ran through the foliage. Manser found a semiautomatic handgun, another cell phone, and a container of pills—then believed to be Adderall but later revealed to be methamphetamine. The officers placed Wilson under arrest.

Returning to the area where Manser had first heard a car door slam, the officers used the key fob seized from Wilson and found that it matched a black Mercedes Benz in that exact location. The officers ran a license plate check on the Mercedes and discovered the plate was registered to a different vehicle, one belonging to a woman named Kayla Shannon. They then checked the VIN number which was registered to a man named Victor Castillo. Because Wilson was under arrest and because the vehicle was not registered to him and had illegitimate license plates, police impounded the vehicle. The officers therefore searched the vehicle prior to having it towed and found a large amount of cash, sets of other vehicle keys, and numerous peach-colored pills, similar to the pills found in the foliage.

Wilson was later charged in a seven-count indictment. He moved to suppress the evidence found in the vehicle, claiming the search violated the Fourth Amendment. The district court denied the motion. He pleaded guilty to two of the counts, one for possession with intent to distribute 500

grams or more of a substance containing methamphetamine in violation of 21 U.S.C. § 841, and one for possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). He reserved the right to appeal the district court's denial of his motion to suppress and to withdraw his plea should he prevail on appeal. He now asks this court to reverse the district court's denial of his motion to suppress.

## II.

When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Richards*, 659 F.3d 527, 536 (6th Cir. 2011). The movant bears the burden of establishing that the challenged search violated his Fourth Amendment rights. *Id.*

## III.

The Fourth Amendment to the Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend IV. Generally, this right is secured by requiring law enforcement officers to obtain a warrant prior to conducting a search. *California v. Carney*, 471 U.S. 386, 390 (1985). However, the Supreme Court has long recognized that some circumstances, including the search of an automobile and the inventorying of seized assets, obviate the need for a warrant provided the search is otherwise reasonable. *See Carroll v. United States*, 267 U.S. 132, 153 (1925) (automobile exception); *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976) (inventory exception).

In one such circumstance, under what is known as the inventory exception, police may search and examine items seized as part of an inventory policy. *See United States v. Smith*, 510 F.3d 641, 650 (6th Cir. 2007). "It is settled law that the police may conduct an inventory search of an automobile that is being impounded without running afoul of the Fourth Amendment."

*United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012) (citing *Smith*, 510 F.3d at 650). This exception exists to allow police to protect items in their custody from theft or loss and to avoid danger arising from the seizure of potentially hazardous articles. *Smith*, 510 F.3d at 651. To pass the Fourth Amendment's reasonableness requirement, an inventory search must be conducted "according to standard police procedures." *Id.* (quoting *Florida v. Wells*, 495 U.S. 1, 5 (1990)). Law enforcement may not undertake an inventory search as a pretext for a criminal investigation. *United States v. Snoddy*, 976 F.3d 630, 634 (6th Cir. 2020).

Another warrant exception, the so called "automobile exception," allows law enforcement to conduct a warrantless search of a vehicle if they have "probable cause to believe that the vehicle contains evidence of a crime." *Smith*, 510 F.3d at 647 (internal quotation omitted). Probable cause exists if, under the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause requires only "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998) (internal quotation omitted). Importantly, the automobile exception is not limited to cases where the car is immediately mobile, *Carney*, 471 U.S. at 391, or to items in plain view, *United States v. Ross*, 456 U.S. 798, 817-22 (1982). Rather, law enforcement may search a vehicle and the containers therein provided the officers have probable cause to believe that the object of the search may reasonably be found in the vehicle or containers. *Id.* at 824.

These officers had two legitimate reasons to search Wilson's vehicle without a warrant. Start with the inventory exception. Grand Rapid's impoundment policy provides that officers "shall impound" a vehicle when "the driver was arrested and is not the owner." The officers validly arrested Wilson for possession of contraband. After they located his vehicle with the key fob

4

found in his pocket, they discovered that the vehicle was registered to someone else. Because they had arrested Wilson and he did not own the vehicle, they impounded the car and, per department policy, searched it prior to having it towed.

Wilson claims the officers did not follow department policy because they never saw him *drive* the vehicle. Because the policy authorizes impoundments when "the driver" is arrested, Wilson argues, the search was not pursuant to standardized criteria and therefore invalid under the Fourth Amendment. The district court rejected this argument, finding that Manser's observation of Wilson walking away from the nigh-closed vehicle, combined with the key fob found on his person, sufficiently "attached" Wilson to the vehicle for the purposes of the impoundment policy. We agree. The officers could reasonably conclude that Wilson was the driver of the vehicle.

Wilson secondly argues that the real reason for the search was investigatory. He cites the cross-examination of an officer at the scene, who, when asked whether his "real reason for searching the car" was to look for evidence of a crime, simply responded, "Yes, sir." While the Fourth Amendment certainly prohibits inventory searches that operate as a ruse for a criminal investigation, *Wells*, 495 U.S. at 4, we have previously rejected challenges to such searches based solely on the subjective motives of the officers—particularly when the inventory search was inevitable and objectively justifiable. *See Snoddy*, 976 F.3d at 636; *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001). The inventory search in this case was objectively justified by standardized police procedures and did not violate the Fourth Amendment.

Even if we were to conclude that the officers' inventory search fell on the impermissible investigatory purpose side of the line, their search was valid under the automobile exception. The officers undoubtedly had probable cause to search Wilson's vehicle. Manser first noticed Wilson when he heard a car door slam and saw him walking away from the black sedan. That initial

sighting, combined with the discovery of the key fob in Wilson's pocket, supported a fair probability that Wilson had just exited the vehicle. Once the officers recovered both the firearm and drugs which Wilson had attempted to discard while fleeing, they accurately deduced that if Wilson had just exited the vehicle carrying contraband, it was likely that more could be found in the vehicle. The officer's logic and conclusion were self-evidently reasonable.

Wilson makes much of the fact that Manser did not actually see him driving or exiting the vehicle. He argues that because the officers did not actually *see* him exit the vehicle and because he was not arrested in or near his vehicle, that the police did not have probable cause to search his vehicle. This argument is without merit. The probable cause inquiry looks to the totality of the circumstances, including what the officer heard. Considering what Manser heard and saw, we agree with the district court that sufficient evidence "attached" Wilson to the vehicle to support probable cause.

The officers had probable cause to search the vehicle and they did not violate Wilson's Fourth Amendment rights. The district court therefore did not err in refusing to suppress the fruits of the search.

**IV.**

For the foregoing reasons, we affirm the judgment of the district court.