NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0443n.06

No. 24-3715

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 30, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| ROBERT BOXX, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: COLE, KETHLEDGE, and NALBANDIAN, Circuit Judges.

KETHLEDGE, Circuit Judge. Robert Boxx pled guilty to possessing a firearm as a felon. He now appeals the district court's denial of his motion to suppress evidence of the firearm underlying the charge. We reject his arguments and affirm.

I.

In October 2018, Boxx was driving a car belonging to his girlfriend, LaChana Stovall, when Toledo Police Department officers Zach Cairl and George Kral stopped him for a traffic violation. The officers soon learned that Boxx had a suspended driver's license. Section 2.3 of the Department's Standard Operating Guidelines (the "policy") provided that "Officers shall impound vehicles if" the "Driver has a Suspended Operator's License." Section 5.6 prohibited impoundment "when the owner is capable of promptly caring for it himself," unless Section 2.3 required impoundment. The vehicle's owner, Stovall, soon arrived on the scene and asked to take the car. But the officers denied the request because Section 2.3 mandated impoundment.

Cairl then conducted an inventory search of the vehicle. Section 4.3 of the Department's policy directed officers to "inventory the contents of all closed containers (boxes, bags or unlocked suitcases)" and "all locked compartments . . . if keys to said compartments are readily available." Cairl found a key in an unsealed (but closed) candy box, which he used to open the glove compartment—in which, he found a firearm. At the time, Boxx had prior state felony convictions for drug trafficking, firearm possession, and sex offenses. The officers arrested him.

Boxx was thereafter charged with possession of a firearm as a felon. He later moved to suppress the firearm as evidence, arguing that the impoundment and search of the vehicle violated the Fourth Amendment. The district court held an evidentiary hearing at which Cairl and Kral testified. The court ultimately denied Boxx's motion to suppress and several related motions. Boxx then entered a conditional guilty plea, reserving the right to challenge the court's suppression rulings on appeal. The court sentenced Boxx to 15 years' imprisonment. This appeal followed.

II.

Boxx challenges the district court's denial of his motions to suppress. We review the district court's legal conclusions de novo and its factual findings for clear error, viewing the evidence in the light most favorable to the district court's decision. *See United States v. Collazo*, 818 F.3d 247, 253 (6th Cir. 2016).

Boxx first argues that the district court erred in concluding that the officers impounded the car pursuant to a "standardized procedure." R. 46 at 6-7. Officers may impound vehicles without violating the Fourth Amendment if they "do so according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *United States v. Snoddy*, 976 F.3d 630, 634 (6th Cir. 2020) (cleaned up). Here, the Department maintains a written policy that specifically requires that a vehicle be impounded if its driver has a suspended license.

Boxx contends that the Department's written policy is unstandardized in practice. He points to testimony from Cairl and Kral, who said they had occasionally refrained from impounding a vehicle—when, for instance, children were in the car or the weather was bad. According to Boxx, these departures from the Department's policy render it discretionary rather than standardized. On this record, that is an overstatement: those departures were occasional, in extenuating circumstances; and the officers here applied the Department's policy by its terms. Nor is there any evidence that these officers impounded the vehicle on suspicion of "criminal activity." *See Snoddy*, 976 F.3d at 634. The district court did not err on this point.

Boxx also argues that even if the Department's policy was standardized, the vehicle's impoundment was unreasonable because its owner, Stovall, eventually arrived on the scene. By then, however, the officers had learned that Boxx's license was suspended. And for that reason, the Department's policy specifically required them to impound the vehicle, notwithstanding Stovall's presence. *See* R. 18-11, § 5.6. Boxx says that requirement makes the policy "per se unreasonable." But the officers were not constitutionally required to offer Boxx or Stovall "an alternative method of securing the vehicle." *United States v. Hockenberry*, 730 F.3d 645, 660 (6th Cir. 2013). And Boxx does not give us a compelling reason for concluding that a standardized policy "consistent with legitimate public safety and community caretaking purposes" becomes per se unreasonable merely because an alternative policy would have been more convenient for him. *See United States v. Kimes*, 246 F.3d 800, 804 (6th Cir. 2001).

Finally, Boxx argues that Cairl's search of the candy box was investigative rather than part of an inventory search. *See generally United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998). In conducting an inventory search, officers must "simply follow the applicable policy." *United*

*States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007). And "policies of opening all containers or of opening no containers are unquestionably permissible." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

Here, Section 4.3 of the Department's policy directs officers to "inventory the contents of all closed containers (*boxes*, bags or unlocked suitcases)" and "all locked compartments . . . if keys to said compartments are readily available." R. 18-11, § 4.3 (emphasis added). Cairl did all that here. First, he found a "closed container"—the unsealed candy box—and identified its contents, namely a key. He then used that key to open the glove compartment, where he found the firearm. Cairl thus followed "the applicable policy" according to its terms. *Tackett*, 486 F.3d at 232. Boxx counters that Cairl was unlikely to find any property in the box. But property comes in all shapes and sizes—as the search here illustrates. Hence we reject this argument too.

The district court's judgment is affirmed.